FERRY COMPANIES *v.* WHITE.

(*Jackson.* September 20, 1897.)

1. PRACTICE.  *Motion to exclude plaintiff's evidence.*

   A motion by defendant to exclude plaintiff's evidence from the jury, on the ground that it will not support a verdict in his favor. is not proper practice in this State. (*Post, p. 261.*)

2. CHARGE OF COURT.  *Not too general or abstract, when.*

   A charge is not erroneous because of generalization and abstractions which lead up to the statement of the specific propositions of the law determining the rights and responsibilities of the parties on the issues of fact involved. (*Post, pp. 261, 262.*

3. COMMON CARRIER.  *Negligent in protecting passenger against acts of other passengers.*

   The lawfulness of the act of a passenger on an excursion boat, in recklessly using his gun with a loaded shell, will not of itself excuse the owners of the boat from liability for an injury resulting from such passenger's negligence or lack of caution, provided his action is such as to excite apprehension in a reasonably prudent person. (*Post, pp. 262–264.*)

4. SAME.  *Same.*

   The owner of a steamboat is required to exercise the utmost vigilance and diligence in protecting its passengers from injuries by the negligent and careless use of a loaded gun, exhibited by another passenger, where, under all the circumstances, such owner, or his officers and agents, might reasonably expect or anticipate the injury. (*Post, pp. 264–270.*)

   Cases cited: 6 Blatch., 158; 57 Me., 202; 90 N. Y., 588; 58 Miss., 200; 4 U. S. Cir. Ct. App., 231; 123 Ill., 9; 97 Mass., 361; 97 N. Y., 494; 23 L. R. A., 442.

5. SAME.  *Charge as to defendant's liability.*

   An instruction in an action against a steamboat company for personal injuries to a passenger, that the evidence must satisfy

them that the boat was being run by and in defendant's interest at the time of the injury, sufficiently presents the defensive theory that the excursion, during which plaintiff was injured, was an individual affair of a third person, for which the company was not liable. (*Post, pp. 270–272.*)

6. VERDICT. *Not excessive.*

A verdict for $3,500 for an injury to a laborer who is shot in the finger and through his thumb, and whose right arm is perforated with shot from the shoulder to his hand, many of which were never extracted, and whose right leg also received several shot, by which his capacity for lifting is permanently affected, is not excessive. (*Post, pp. 258, 272.*)

---

FROM SHELBY.

---

Appeal in error from the Circuit Court of Shelby County. L. H. ESTES, J.

RANDOLPH & SONS and METCALF & WALKER for Ferry Companies.

TURLEY & WRIGHT for White.

BEARD, J. This is a suit for damages, brought by the defendant in error against the West Memphis Packet Company and Memphis & Arkansas Ferry Company, the gravamen of the complaint being that while a passenger on the steamboat "Golden Gate," operated, as is alleged, by and in the joint interest of plaintiffs in error, owing to the failure of their servants to preserve order and decorum on

15 P—17

this boat, the defendant in error was severely injured by a shot fired from a gun negligently handled by a fellow passenger. Upon pleas which made issues upon all the material averments in this declaration, a trial was had which resulted in a verdict of $3,500 against both plaintiffs in error, from the judgment on which they have prosecuted their appeal to this Court.

As to the facts, it is only necessary to say that the evidence tended to show that plaintiffs in error were rival corporations, operating different steamboats, doing a ferry business from Memphis to different points on the west shore of the Mississippi River, and, at the same time, giving occasional excursions (for revenue), to which the public were invited; that this rivalry was attended with much loss to both companies, and at last resulted in litigation; that, pending this litigation, they entered into an agreement by which the West Memphis Packet Company was to retire and tie up its steamer, the "C. B. Bryan," until necessity should call it out, and that the Memphis & Arkansas Ferry Company should continue its steamer, 'the "Golden Gate," in operation, to do the work theretofore done by the two steamers, in the interest of both companies, they sharing equally the losses and profits; that this agreement provided for a board of arbitrators, who should choose the officers of the combination and the employes to man this boat; that this board was never constituted, but that all officers of the Memphis &

Arkansas Ferry Company, as well as crew of the "Golden Gate," were retained by the combination, save that Mr. Bryan, of the West Memphis Packet Company, was made treasurer of the combination.

The evidence further discloses that one of the general officers of the company owning the "Golden Gate," and engaged in operating this steamer, was James Couch; that he, through the newspapers of Memphis, advertised that an excursion would be given by that boat to a point some twenty miles below Memphis; that this advertisement had general publicity, and was known to Mr. Bryan, of the West Memphis Packet Company, and treasurer of the combination, several days before it occurred, and that he made no objection to it; that, while both boats, before the combination, made similar excursions in the interest of the rival companies, such as occurred afterwards were made by the "Golden Gate" on joint account, and that the proceeds of this excursion were paid by Couch into the treasury of the Memphis & Arkansas Ferry Company.

The evidence also discloses that the defendant in error, with his children, in company with seventy-five or one hundred other persons, of all ages and both sexes, embarked as passengers on this excursion, and that among these passengers were a number who were armed with guns and pistols, who, occupying positions on the different decks of the boat, soon after it left its moorings and got under way, began an indiscriminate firing at objects in the water, to

the great alarm of many persons on board. At
this time the defendant in error was on the middle
deck, where he had been directed by Couch to go,
and where many of the other passengers were, seated
with one of his children on his knee and the others
near by, while on the deck above were a party of
three or four persons who were practicing with their
guns. One of these parties (a passenger named
Phillipi), while manipulating a repeating gun, for the
purpose of exhibiting its construction and movements
to those persons immediately around him, placed a
loaded shell in one of the chambers of the cylinder,
which, while the muzzle of the gun was pointed
down, in some unknown and accidental way exploded,
the shot therefrom passing through the thin cover-
ing or roof of the hurricane deck into the body of
White and the child in his arms, inflicting the in-
juries for which he here sues, and a mortal wound
on the child.

Among the persons standing near Phillipi, watch-
ing and interested in the experiment, was Couch,
the party who advertised the excursion. The evi-
dence shows that not only he had not endeavored
to stop the firing, but he had encouraged it by ac-
tively participating in it.

The contention of the plaintiff in error was that
this excursion was an individual enterprise of Couch's,
in which their combination was not interested, and
also that Couch was not the master nor in charge
of the boat on this excursion; but there was evi-

dence tending to show otherwise, upon which the jury could, and, it must be assumed in this Court, did, rest their verdict. This is equally true with regard to the other issues of fact passed upon in the Court below.

After the evidence of the plaintiff was in, the defendants moved the Court to exclude it from the jury, upon the ground that it would not support a verdict in his favor. This motion was overruled, and the action of the Court in this regard is assigned for error, and an earnest argument is submitted, insisting upon this as a proper practice in this State. Whether the practice is a wise one, and, as such, should be adopted, it is not necessary for us to determine. It is sufficient to say that it has never prevailed in Tennessee, and there was certainly nothing in the testimony, as we find it in this record, which would have warranted its introduction and application in this case.

Sweeping objection is made to the charge of the trial Judge that it abounds in generalities without application to the facts of the case, and that its effect was to confuse or mislead the jury, rather than guide them to an intelligent verdict.

We have carefully examined the charge, in view of the interest involved and the hurt that could easily, in such a case, be unconsciously inflicted by the trial Judge on plaintiffs in error, and, while we find in it more or less of generalization and abstraction, which it would have been wiser to avoid, yet, we

do not regard it as amenable to this severe criticism. While general or abstract propositions are stated with perhaps too much elaboration, it is with á purpose, as we understand it, to illustrate and emphasize the relations of a carrier to his passengers, and their respective rights and responsibilities, and we are not able to discover, in doing this, that the jury were led to the consideration of false, or left to grope in the dark as to the true, issues.

Among the instructions given, and which, it is now insisted, were either confusing generalities or else positively erroneous when applied to the facts of this case, is the following: "The lawfulness of an act from which injury results is no excuse for the negligence, unskillfulness, or incaution of the party. Everyone in the exercise of a lawful act is bound to use such reasonable and vigilant precaution as that no injury may be done to others. Nor is it material in this action whether the injury was willful or not, but the gist of the action is whether or not the defendant used proper care in allowing the passengers using guns to use them in the manner the evidence shows they did use them on this trip."

It is conceded that if this was an action against the party who placed the loaded shell in the gun, and pointed it downward towards the defendant in error, when it was discharged to his hurt, that the fact that the explosion was unexpected and accidental, would not discharge such party from liability. For

the rule admittedly is well settled, that "if the in-
jury is not the effect of an unavoidable accident, a
person by whom it is inflicted is liable to respond
in damages to the sufferer." *Ayers* v. *Tally*, 3
Sneed, 677.    While this is conceded to be a sound
principle, yet it is insisted it has no application to
this case, and that the effect of the Court's instruc-
tion is to make the plaintiffs in error liable for the
incaution of Phillipi, however blameless they them-
selves might be.    We do not think so!    It is true
the Court does say to the jury, in substance, that
the lawfulness of an act will not excuse incaution
or negligence in its performance, yet he distinctly
informs them that the right of recovery in this
action depends upon whether plaintiffs in error exer-
cised proper care in allowing Phillipi to use the gun
in the manner disclosed; and, apparently to guard
against all misapprehension on this point, a little
further along, the trial Judge said: "If the conduct
of the passengers was such as not to create, in the
minds of any reasonable person, any apprehension of
danger, then the officer would be justified in per-
mitting the passengers [to continue] their course of
conduct, and cannot be charged with negligence in
so doing, or made liable for injuries resulting there-
from."    In other words, while saying to the jury
that, however lawful it might be in Phillipi to ma-
nipulate his gun, even with a loaded shell, on an
excursion boat with men, women, and children on
board, yet this would not excuse the injury result-

ing from his incaution or negligence in doing the act; but the right of recovery against plaintiffs in error depended upon whether they had been careless or negligent in permitting Phillipi to make this experiment, and the trial Judge cautions the jury that they would not be actionably negligent if there was nothing in the conduct of Phillipi to excite apprehension in a reasonable, prudent person. Thus guarded, we have no doubt of the soundness of the proposition charged.

It is next insisted that there was error in giving the following instructions: "While he (the carrier) is not an insurer or bound to carry passengers safely at all events, yet the rule as to the care and foresight to be exercised makes him responsible for injuries and losses arising from even the slightest negligence in not providing safe and suitable means of transportation, or skilled, competent, and careful officers and crew, or in formulating and enforcing such rules of order and decorum as will secure and protect the passengers from injuries arising from careless, thoughtless, or negligent acts of their fellow passengers. The defendants in this case were bound to exercise the utmost care and vigilance for maintaining order and guarding the plaintiff, White, who was a passenger on board the boat, against personal injury, from whatever source arising, which might reasonably have been expected to occur, in view of all the circumstances of the case and the number and character of the passengers on board the boat."

It will be seen that the trial Judge lays down the rule which requires the exercise of the utmost vigilance and diligence on the part of the boat's officers and agents in protecting the defendant in error, yet he carefully limits its operation to cases of danger which, under all the circumstances, they might reasonably have expected or anticipated. He does not make them insurers, and liable at all hazards, but, in effect, tells the jury that they were bound, and only bound, to give to the protection of defendant in error the utmost care and vigilance against a danger which prudence would suggest as possible to occur under the circumstances of the case. We are satisfied, not only that this language could not have been misunderstood, but that it announced the law.

In the leading case in America of *Flint* v. *Norwich*, 6 Blatchford, 158, Shipman, Justice, in submitting to the jury a case involving the liability of a steamer and its owners for an injury sustained by one passenger from the act of a fellow passenger, said: "The defendants were bound to exercise the utmost vigilance and care in maintaining order and guarding the passengers against violence from whatever source arising, which might reasonably be anticipated or naturally be expected to occur, in view of all the circumstances, and of the number and character of the persons on board." This is regarded as a fair statement of the rule, and it has been adopted and approved by the Courts where

they have had occasion to deal with this question. See *Goodard* v. *Grand Trunk Railway Co.*, 57 Me., 202 (S. C., 2 A. R., 39); *Stewart* v. *Brooklyn*, 90 N. Y., 588 (S. C., 43 A. R., 185); *Railroad* v. *Burke*, 58 Miss., 200. See note to *Meyer* v. *St. Louis, etc., R. R.*, 4 U. S. Cir. Ct. App. Rep., 231. But it is contended that this rule of the "utmost vigilance" may be sound when applied to the protection of passengers against injuries resulting from faulty machinery or wrongful acts of the employes of the carrier, yet it does not apply to injuries arising from the misconduct of fellow passengers; that, in the class of cases embracing the latter, "reasonable diligence" is the measure of liability. This distinction was insisted on in *Pittsburg* v. *Hinds*, 53 Pa. St., 512, and there rejected, the Court saying that, if the employes of the carrier had no control or power over the passengers, the argument would be sound. The case of *Chicago Railroad* v. *Pittsburg*, 123 Ill., 9, is relied upon as authority for this contention, but it will be found that the trial Judge there gave in charge to the jury the rule of "utmost vigilance," and the judgment on a verdict following his instruction was affirmed.

While there will be found some general observations of the Court which give some support to the view here insisted on, yet, take the opinion as a whole, we think it in line with *Flint* v. *Norwich*, *supra*. The Court say: "It is the duty of carriers by rail to preserve order in their carriage, and to protect

passengers from all danger, from whatever source arising, on their trains. 'But with regard to danger and hazard to travel arising otherwise than on the train, and not incidents of such travel' [as was the case there] 'the degree of care required will depend upon the attendant circumstances.'" Yet, "in no case," continues the Court, "must the carrier expose the passenger to extra hazardous dangers that might readily be discovered or anticipated by all reasonable care and diligence." It is well to observe, also, that the injury to the passenger complained of in that case was one that resulted from an invasion of the cars by a violent mob from the outside, and the general observations of the trial Judge, here relied on, were addressed particularly to that phase of the facts.

In *Simmons* v. *Steamboat Co.*, 97 Mass., 361 (S. C., 93 Am. Dec., 99), the Court does make a distinction in the degree of care to be exercised in the one case and then in the other. The Court there say: "The defendants were bound to see that their officers, agents, and servants used the utmost care and diligence in keeping the steamboat suitably provided with suitable machinery, boats,  :  .  . and competent officers and crew, . . . and in making all arrangements necessary to secure the passengers against any danger which might be anticipated from the action of rivers and seas, of the officers, . . . . or of other passengers. They were not, indeed, responsible for the negligent or wrongful acts of the

passengers to the same extent as for those of their own officers and crews.    .    .    .    But they were bound to use the utmost skill and care of prudent men in taking precautions to prevent any passenger from being injured by the ignorant, negligent, or reckless acts of other passengers.''

It will be seen that there is a slightly appreciable difference in the degrees of care exacted in the two classes of cases, but it falls far short of the modification of the rule insisted on by the plaintiffs in error.    Nor do we see any sound reason for such modification.    On the contrary, we think that carriers by land, as well as on the water, with power conferred by law to protect passengers who have committed themselves to their care, ought to be held to the greater degree of diligence in guarding them from the negligence, as well as violence, of their fellow passengers, when, as prudent men, knowing the surrounding facts, they might well anticipate that the acts in question might be attended with injury.    And we certainly find nothing in the facts of this case, especially so far as the Memphis & Arkansas Ferry Co. is concerned, that should induce a relaxation of the rule, as we think the conduct of the parties in charge of this boat was only a little short of gross negligence.    But, again, it is contended that this rule of ''utmost care'' had been enforced alone in cases where passengers had received injuries from mobs, riots, or from assaults or other form of violence of drunken or insane parties, and

never in cases where the injury resulted from the negligence of a fellow passenger. In this contention the counsel for the carrier is also in error.

*Simmons* v. *Steamboat Co.*, *supra*, is a leading case enforcing a contrary view. In that case, plaintiff was a passenger on the steamboat, and took a position on deck, as he had the right to do, and at a point underneath a small boat which was suspended by tackle and falls, a part of the necessary equipment of the steamer. There was nothing in the evidence to indicate that this small boat was improperly hung or insecurely fastened. The plaintiff showed, however, that when he took his position there were already two persons in this boat, and that shortly after this number was increased to five. It was also in evidence that passengers, before the day in question, rode in this boat, with the knowledge and permission of the officers of the steamer. While plaintiff was standing under it, the stern bolt broke, and it fell on plaintiff, and injured him seriously. The Court say: "They [the steamboat company] were bound to use the utmost skill and care of prudent men in taking precautions to prevent any passenger from being injured by the ignorant, negligent, or reckless acts of other passengers. As to the boat, . . . the fact that it was hung in the place in which it was by order of the government inspector, did not protect the defendants from responsibility for negligence in the manner of hanging or using it. They were still bound to use

the utmost skill and care consistent with the nature and extent of their business, in so keeping it secured and preventing passengers from getting into it, as to guard against injury by its falling upon a passenger from any cause, including careless or irregular acts of other passengers which might reasonably be anticipated."

In *Carpenter* v. *Railroad Co.*, 97 N. Y., 494 (S. C., 49 A. R., 540), the same rule was applied. There a passenger, while entering a station for the purpose of taking a train, was struck by a mail bag carelessly and negligently thrown from the mail car by a postal clerk employed by the United States government, and it was held that the clerk and the injured party were fellow passengers; that the railroad owed the duty of utmost vigilance to protect the one from an injury resulting from the negligence of the other, that the manner of throwing off these mail bags was dangerous, and that this had been so long the customary method of disposing of them that notice to the railroad company might be fairly implied. On the same point see *Galloway* v. *Chicago & Mil. Railroad* (Minn.), 23 L. R. A., 442.

A number of special requests were submitted by plaintiffs in error, some of which were rejected and others given in a modified form. As we are satisfied with the general charge, only one of these will be noticed. The trial Judge was asked and declined to give the following: "If the jury believe, from the evidence, that the defendant, the West Memphis

Packet Company, did not own and had no interest in the steamboat 'Golden Gate,' and had nothing to do with the running or navigating of the said steamboat on the occasion alleged in the said declaration, . . . then the jury will find for the defendant, the West Memphis Packet Company.''

The real contention of both plaintiffs in error, in the progress of this cause, has been that this excursion was an individual affair of Couch's, for which neither was responsible, with the additional incidental insistence of the West Memphis Packet Company that it was not liable because the ''Golden Gate'' was not managed by the regular officers of the Memphis & Arkansas Ferry Company, who were, for the time being, the officers of the joint enterprise. Both phases of this contention were submitted sufficiently to the jury.

In the outset of his charge, the trial Judge says distinctly to the jury that, among other essentials to recovery by plaintiff below, ''the evidence must satisfy you [them] that the Golden Gate was being run by and in the interest of defendants at the time of the injury.'' This clearly put the burden on the plaintiff below of showing that the West Memphis Packet Company was interested in this venture, as a prerequisite to recovery, and in this sentence the trial Judge covers the point to which this special request was directed. The same reply may be made as to the refusal of the trial Judge to give the further special request as to the liability

of the Memphis & Arkansas Ferry Company, with this addition, that, in granting the fifth special request of the company, even with the qualification attached, the fourth special request was more than covered, and left nothing that this company could complain of on this point.

But we are asked to reverse this judgment upon the ground that the verdict is excessive. The testimony shows that the defendant in error was shot through the finger and the thumb of his left hand, that his right arm was perforated from his shoulder to his hand, with shot, a great number of which were never extracted. It also appears that several shot entered the right leg and one at the joint of left ankle. While the surgeon who attended him said he regarded the wounds as not at all serious, yet there is testimony, upon which the jury were warranted in acting, that this injury has permanently affected his strength, and especially his capacity for lifting, a power very valuable to him as a laboring man. This question of damages was one peculiarly for the jury, and, in the absence of a conviction that their verdict is the result of caprice, prejudice or corruption, we do not feel authorized to interfere with it.

Judgment is affirmed.