# Railroad   *v.*   Kuhn.

## (*Jackson.*   May   11,   1901.)

1. **Declaration.**   *Sufficient for personal injury sustained in another State.*

   In an action by a passenger against a common carrier for personal injury sustained from derailment and overturning of a coach in another State, it is not essential that the declaration shall aver the breach of any statute of that State.   It is sufficient if the declaration avers a case of common law negligence. (*Post, pp. 109, 110.*)

   Case cited and approved: Railroad *v.* Reagan, 96 Tenn., 128.

2. **Same.**   *Avers case of common law negligence.*

   A declaration makes a *prima facie* case of actionable negligence, at common law, which avers that defendant is a common carrier, and that plaintiff, as its lawful passenger, was injured by derailment and overturning of its coach, in which he was traveling.   (*Post, p. 110.*)

3. **Common Carrier.**   *Presumption of negligence from derailment of coach.*

   Injury to passenger from derailment of a coach, in which he is traveling, raises a *prima facie* presumption of negligence on the part of a common carrier, and casts upon it the burden of showing that the accident causing the injury was unavoidable by the exercise, on its part, of the utmost degree of care, skill, and foresight.   (*Post, pp. 110–117.*)

4. **Same.**   *Measure of duty to passengers.*

   Common carriers are not insurers of the safety of their passengers, but they are held to the exercise of the greatest, highest or utmost care, skill, and foresight that human experience and observation and the known laws of nature suggest as conducive to the passenger's safety, and capable of being put into practice; or, to express it otherwise, they are held to the exercise of such active, solicitous care, skill, and foresight as intel-

Railroad v. Kuhn.

ligent, suitably-trained, and very cautious persons would be
expected to exercise for their own personal protection in the
same business and surroundings, and with the instrumentali-
ties required and employed; and this obligation, in the case of
railway carriers, applies not only to the selection and use of
suitable carriages, motive power, appliances, and servants, as
in case of stage lines, but also to the proper construction and
maintenance of roadbed and tracks. (*Post, pp. 124–131.*)

Cases cited and approved: Railroad v. Elliott, 1 Cold., 611; Rail-
road v. Messino, 1 Sneed, 221; Ferry Co's. v. White, 99 Tenn.,
256; Transit Co. v. Venable, 105 Tenn., 460.

Cited and distinguished: Railroad v. Mitchell, 11 Heis., 404;
Sommers v. Railroad, 7 Lea, 204; Young v. Bransford, 12 Lea,
237; Railroad v. Stewart, 13 Lea, 437.

5. SAME. *Charge of Court correctly and sufficiently defines carrier's
duty to passenger.*

In an action by a passenger against a common carrier for injury
resulting from derailment of a coach, the Court's charge as to
the carrier's duty is correct and adequate, and makes refusal
to give additional requests proper, which is in these words, to
wit: "In this case, if you believe from all the evidence that
the sleeping car in which plaintiff was a passenger, was
derailed and overturned as a direct and proximate result of a
rain, which was so heavy, unusual, and extraordinary that it
could not have reasonably been expected or anticipated by
defendant railroad company, and that such unusual and extra-
ordinary rain was the cause of a portion of defendant's rail-
road embankment giving away, and the consequent derail-
ment of said sleeping car in which plaintiff was a passenger,
and that said accident could not have been prevented by the
exercise of the utmost degree of care and vigilance on the part
of the defendant, then plaintiff cannot recover. . . . De-
fendant railroad company, as a common carrier, does not insure
the absolute safety of its passengers, and is not responsible
for the direct and violent acts of a nature which could not
reasonably have been foreseen and guarded against or pre-
vented by the exercise of a high degree of care, skill, and pru-
dence, and if the defendant railroad company maintained its
culvert and the railroad embankment at the point where the
accident occurred in a good condition, and the same were safe
for all emergencies which could reasonably have been antici-
pated by it, and at the time of the injury complained of de-
fendant was in the exercise of the utmost degree of care and

Railroad *v.* Kuhn.

prudence, both in the matter of the maintenance of said embankment and in the operation of its trains over the same, then said defendant is not liable. If you find from the testimony that defendant was without negligence in the construction and maintenance of the culvert, and that the injury to plaintiff was the result of an inevitable accident, and such as no human foresight could avert, then the defendants would not be liable, and your verdict must be in favor of the defendant." (*Post, pp. 120-122.*)

6. SAME.  *Charge correctly defines carrier's duty as to construction and maintenance of bridges and culverts.*

In an action by a passenger against a common carrier for injury sustained by derailment of car caused by defective culvert, the Court's charge is correct and adequate in these words, to wit: "The measure of diligence required in the maintaining of bridges and culverts by railroad companies is that the character and size of the stream, the extent and situation of the agricultural land about it, and the nature of the rainfalls and floods affecting it, shall be ascertained and provided for so far as the exercise of ordinary foresight, care, and skill can accomplish them, but there is no requirement that the recurrence of cyclones, cloudbursts, and the like shall be foreseen, or guarded against, though it is known that they have many times happened. And, therefore, if you find from the proof that the culvert was of sufficient capacity to carry off safely all ordinary accumulations of water, and that the defendant constructed and maintained the same with due care and frequently inspected the same, and it appeared to be amply sufficient for all purposes, then the Court charges you that the company would not be liable for the injury suffered by the plaintiff from such extraordinary downpour of rain, or cloudburst, as overtaxed the capacity of said culvert and caused a washout in same." (*Post, pp. 122, 123.*)

7. PROXIMATE CAUSE.  *What is.*

Where the unsafe condition of a culvert that causes derailment of a coach and injury to a passenger has been caused by the concurrence as proximate causes of the act of God, to wit: an unprecedented rain, and the negligence of the carrier in its construction or repair, the carrier is liable for such injury of its passenger, provided it is reasonably certain that the unprecedented rain would not alone, without the concurring negli-

Railroad v. Kuhn.

gence of the carrier, have produced the same result. (*Post*, *pp. 123, 124.*)

Cases cited and approved: Boeppe v. Railroad, 104 Tenn., 427; Express Co. v. Jackson, 92 Tenn., 327.

8. CHARGE OF COURT. *Refusal of requests proper.*

It is not error to refuse to give additional instruction, upon request of a party, where same are substantially covered by the original charge. (*Post, p. 123.*)

Cases cited and approved: Kaufman v. Fye, 99 Tenn., 145; Railroad v. Pugh, 97 Tenn., 624; Railroad v. Reagan, 96 Tenn., 129.

FROM SHELBY.

Appeal in error from Circuit Court of Shelby County. L. H. ESTES, J.

FENTRESS & COOPER for Railroad.

WATSON & FITZHUGH for Kuhn.

CALDWELL, J. On the night of April 29 a sleeping car, attached to a passenger train of the Illinois Central Railroad Company, was derailed, and thrown down an embankment, near the village of Boaz, Kentucky. Simon Kuhn, one of the sleeping passengers, was thrown violently from his berth and seriously injured in his person.

Some time thereafter he sued the company in the Circuit Court of Shelby County, Tennessee, and there obtained verdict and judgment for

$1,000 damages. From the action of the trial Judge in refusing a new trial, the company prosecutes this appeal in error.

The first assignment of error complains of the failure of the Court below to sustain the demurrer which challenged the plaintiff's declaration for not averring that the wrong therein attributed to the defendant was actionable under some law or statute of the State of Kentucky, where his injury was received.

The demurrer was rightly overruled. Having sued to enforce a common law liability only, it was not necessary that the plaintiff should aver the existence of any local law giving him a right of action. It was sufficient in such case, for him to aver with reasonable circumstantiality, as he did, that the defendant was a common carrier, and that, while its lawful passenger, the car in which he was being transported was overturned, to his personal injury and damage. That was enough to disclose an actionable breach of common law duty on the part of the defendant, and more was not required by any rule of good pleading. *Railroad* v. *Reagen,* 96 Tenn., 128-137.

The second assignment of error is directed against the refusal of the Court to instruct the jury that "the burden is upon the plaintiff, Kuhn, of showing, affirmatively, negligence on the part of the defendant."

Railroad v. Kuhn.

This instruction is not sound, hence its refusal by the Court was proper.

Although not insurers against all damage caused otherwise than by the act of God or the public enemy, as common carriers of goods are, passenger carriers are nevertheless legally bound to exercise the utmost degree of care, skill and foresight to accomplish a safe transportation; and this obligation as to railway carriers, includes the requisite attention not only in the selection and use of suitable carriages, motive power, appliances and servants, as in the case of stage lines, but also the proper construction and maintenance of roadbed and tracks. Hutchinson on Carriers (2d Ed.), Secs. 498 to 505 inclusive, and 524-533; 4 Elliott on Railroads, Secs. 1583 to 1589, inclusive; Ray's Negligence of Imposed Duties, Sec. 4; Cooley on Torts, 642; *Christie* v. *Griggs,* 2 Camp., 79; *Stokes* v. *Saltonstall,* 13 Peters, 181, 191; *Pennsylvania Co.* v. *Roy,* 102 U. S., 451; *Gleason* v. *Virginia Midland Railroad Co.,* 140 U. S., 435; *Ingalls* v. *Bills,* 9 Met., 1; *Railroad* v. *Elliott,* 1 Cold., 611, 616; *Railroad* v. *Messino,* 1 Sneed, 221; *Railroad.* v. *Mitchell,* 11 Heis., 400; *Ferry Cos.* v. *White,* 99 Tenn., 256, 264, 265; *Railroad* v. *Sanger,* 15 Grattan, 230, 237; *Dodge* v. *Steamship Co.* (Mass.), 2 L. R. A., 84, and note; *Palmer* v. *Pennsylvania Co.* (N. J.), 2 L. R. A., 252, and note; *Railroad* v. *Anderson* (Md.), 8 L. R. A., 673, and note; 13 L. R.

A., 95, note; Wharton on Law of Negligence, Secs. 626 to 636; 5 Am. and. Eng. Enc. of Law, 519 to 537, inclusive, and citations; 1 Shearman and Redfield on Negligence (5th Ed.), Sec. 51; 2 Ib., Secs. 494, 495, 497, 499.

Human experience and observation, in connection with the laws of nature, have shown that a faithful discharge of those duties ordinarily prevents the upsetting of the stage coach. or the derailment of the railroad car, and that such a catastrophe seldom occurs except through the omission of some part of the carrier's obligation.

Therefore, all the law required of this plaintiff, in the first instance, was to show that the defendant was a common carrier, that he was its lawful passenger, and that the injuries sued for were caused by the derailment and overturning of the coach in which he was traveling.

That, without more, was sufficient to constitute a *prima facie* case of actionable negligence on the part of the defendant; and, to rebut the presumption of negligence arising from proof of those facts, it was incumbent on the defendant to prove that it had done all within its power to avoid a disaster of that kind. *Stokes* v. *Sallonstall,* 13 Peters, 181; *Railroad Co.* v. *Pollard,* 22 Wallace, 341; *Gleeson* v. *Virginia Midland Railroad Co..* 140 U. S., 435, 443; 2 Shear. & Red. on Neg., Secs. 516, 517; 4 Elliott on Railroads, Sec. 1634; Ray's Neg. of Imp. Du., Sec.

Railroad *v.* Kuhn.

5, pp. 24, 25; 5 Am. and Eng. Enc of Law (2d Ed), 627.

Other cases to the same effect are very numerous, but they need not be cited in this opinion. Many of them are referred to in notes by the text writers just mentioned.

*Transit Co.* v. *Venable,* 105 Tenn., 460, which is a case of collision, stands upon the same ground as this one, and, hence, is authority for the foregoing proposition.

The plaintiff in the case of *Gleeson* v. *Virginia Midland Railroad Co.,* supra, was a clerk on a postal car being transported by the defendant. A portion of this train was derailed by a landslide and in the disaster the plaintiff received the injuries sued for.

In the course of the opinion Mr. Justice Lamar, speaking for the Court, said: "Since the decision in *Stokes* v. *Saltonstall,* 13 Pet., 181, and *Railroad Company* v. *Pollard,* 22 Wall., 341, it has been settled law in this Court that the happening of an injurious accident is, in passenger cases, *prima facie* evidence of negligence on the part of the carrier, and that (the passenger being himself in the exercise of due care), the burden then rests upon the carrier to show that its whole duty was performed, and that the injury was unavoidable by human foresight."

The rule announced in those cases has received

23 P—8

general acceptance, and was followed at the present term in *Inland & Seaboard Coasting Co.* v. *Tolson,* 139 U. S., 551; 140 U. S., 443.

The present case is readily differentiated from that of *Railroad* v. *Mitchell,* 11 Heis., 400, upon the fact that here the injury resulted from a derailment of the coach in which the plaintiff was riding, while there the injury in suit resulted from the falling of the plaintiff's intestate under the wheels of a moving car as he was attempting to alight therefrom.

The one occurrence implies negligence on the part of the defendant, the other does not. This distinction was drawn in that case. 11 Heis., 404, 405. Also, in *Sommers* v. *Railroad,* 7 Lea, 204, 205, and *Young* v. *Bransford,* 12 Lea, 237, and *Railroad* v. *Stewart,* 13 Lea, 437.

The very nature of the fact that a passenger has been injured by derailment of a train or car indicates some omission of duty by the carrier and creates a presumption of negligence on its part. 2 Shear. & Red. on Neg., Sec. 516; 4 Elliott on Railroads, Sec. 1634, p. 2566; Hutchinson Car., Secs. 800, 801; 5 Am. and Eng. Enc. of Law (2d Ed.), 627.

Judge Elliott, after defining the high degree of care to be exercised by passenger carriers and referring to derailments, on the page cited uses this language, viz.:

"As such so-called accidents do not ordinarily happen, however, unless the company fails to exercise such care, and as it is better able to explain how they happened, proof of the derailment of the car and injury thereby caused to the passenger generally raises a presumption that the company was negligent. But the presumption is not conclusive, for it may be rebutted by showing that the injury arose from an unavoidable accident, or an occurrence which could not have been prevented by the highest practicable degree of care and foresight."

For the same reason negligence on the part of the carrier is presumed from the fact that a passenger receives injuries in a collision. *Transit Co.* v. *Venable,* 105 Tenn., 460; 1 L. R. A., 681, note; 4 Elliott on Railroads, Sec. 1635; 5 Am. and Eng. Enc. of Law (2d Ed.), 625, and cases cited.

The rule is fully stated and elaborately illustrated in section 516 of 2 Shearman & Redfield on Negligence, as follows:

"The mere fact of an injury suffered by a passenger, while on his journey, without any evidence connecting the carrier with its cause, is not sufficient to raise a presumption of negligence on the part of the carrier. But proof of injury suffered from contract with anything for which the carrier was responsible, or which, as a general rule, he ought to have guarded against, or from

the absence of anything which, as a general rule, he ought to have supplied, is sufficient to put him upon his defense.

"Having established so much, the plaintiff is entitled to recover, without proving affirmatively that the surrounding circumstances were of that character to which the general rule was meant to apply, and without showing by what particular acts of misconduct or negligence the injury was occasioned.

"Thus, for example, it is a general rule that a railroad company must maintain a good track and roadbed. Proof of a breach of the track, by which the cars were thrown off, is therefore sufficient evidence of negligence to put the company upon its defense in an action by a passenger.

"So, in general, a railroad company is bound to keep its track clear; and therefore the presence of an animal or other obstruction upon the track, causing an injury to a passenger, is presumptive evidence of negligence.

"On the same principle the mere fact of a train coming into collision with another train, or having run off the track, or being several hours behind time, or the breaking of an axle or wheel, or the fall of a bridge is *prima facie* evidence of negligence.

"So the overturn of a car or stage coach, or the coming off of a wheel, or the breaking of a

steamboat's paddle or propeller, or the bursting of its boiler, is presumptive evidence of negligence, in favor of a passenger injured thereby. Indeed, whenever it is made to appear that the accident resulted from defects in defendant's roadbed, machinery, appliances, or method of. operating the road, the presumption of negligence arises, and the onus then rests upon the defendant to show that the injuries were caused without its fault."

The rule and the reason for it are similarly expressed and exemplified in sections 800 and 801 of Hutchinson on Carriers.

Immediately after the present disaster, which occurred at night, in an agricultural district and about midway between two small stations, it was discovered that a brick culvert and the adjacent embankment of earth and roadbed had been so far washed out as to weaken the foundation of the track to such an extent that it gave way, and thereby derailed and overturned the sleeping coach after the preceding part of the train had passed over.

In explanation of the hurtful portion of these undisputed facts and in self-exoneration, the defendant introduced testimony tending to show that the culvert had always been in good repair up to that night, and of ample capacity to carry away all water coming to it, and that the wash-out had just been caused by an unprecedented downpour of rain, or waterspout, so sudden and

confined to so limited an area that the company's agents and servants at neither of the neighboring stations, or elsewhere, had been able to anticipate or discover it before the wreck actually occurred.

The plaintiff, on the other hand, introduced testimony tending to show that the culvert had been out of repair for some time, that a part of its floor and lateral support had been washed away previously and never replaced, and that the rainfall that night, though a hard one, was not unprecedented in that locality.

The third and fourth assignments of error are based upon the Court's declination to give the jury the instruction following, to wit:

"If you are satisfied from the evidence that the culvert of defendants was constructed and maintained in a reasonably safe and proper manner and had successfully withstood for a number of years the ordinary floods in that immediate neighborhood and was of sufficient size and capacity to allow, ordinarily, all the accumulated water to pass, but on the night of the accident there was an unprecedented downpour of rain and a sudden and extraordinary flood, resulting in the sudden impairment of said culvert, whereby the track and embankment sank to such an extent as to derail the car in which plaintiff was a passenger, and all this happened in the night time before defendant had, or reasonably could have had, notice

of its impairment and repaired the same, then the defendant would not be liable, and plaintiff cannot recover.

"The duty of the defendant company as to its tracks and culverts is adequately performed if they be so constructed and maintained as to resist the ordinary and probable action of the elements.

"2. It is contended by the defendant that there was an unprecedented rainfall in that immediate vicinity and to the west of the culvert, which defendant claims amounted to a waterspout; that the water accumulated at the fill near the railroad track, in larger quantities than could be carried off by the brick culvert which had been built there when the road was originally constructed, to wit: twenty years or more prior, and that the same was always regarded as safe, and had always been of sufficient capacity. Defendant further claims that the washout and break in the track occurred on a dark, stormy night, and that the sleeper in which the plaintiff was a passenger was precipitated without any negligence on the part of the company from the track, injuring plaintiff.

"The Court charges you, if you find the facts this way, then the railroad company would not be liable, and your verdict should be in favor of the defendant.

"3. If you find from the proof that this culvert had withstood all ordinary accumulations and

flow of water for a long period prior to the accident, and that the same was properly constructed and maintained, and that on the night in question the culvert had proved insufficient to carry the water off, and a great pond had been forced above the fill, and the water bored the fill out, leaving the rails and ties of the track unbroken, and that this happened at a time of night and under circumstances which rendered it impossible for the train men and track men to know exactly the situation, and you further find that there had been no considerable rain immediately north of the accident and immediately south of the accident, where the defendant's section men had their section houses, and nothing unusual either north or south of said place called their attention specifically to this downpour of rain, and you further find that the engine, machinery and cars were in good condition, and that under these circumstances the engine and train were moving at a reasonable rate and that the car in which the plaintiff was a passenger was under these circumstances derailed and he was injured, then the defendant would not be liable and your verdict would be in favor of the defendant."

The charge, which the Court delivered to the jury before these instructions were requested and declined, contained these passages, namely:

"In this cause, if you believe from all the evidence that the sleeping car in which plaintiff

Railroad v. Kuhn.

was a passenger, was derailed and overturned as a direct and proximate result of a rain which was so heavy, unusual and extraordinary that it could not have reasonably been expected or anticipated by defendant railroad company, and that such unusual and extraordinary rain was the cause of a portion of defendant's railroad embankment giving away, and the consequent derailment of said sleeping car in which plaintiff was a passenger, and that said accident could not have been prevented by the exercise of the utmost degree of care and vigilance on the part of the defendant, then plaintiff cannot recover. . . . Defendant railroad company, as a common carrier, does not insure the absolute safety of its passengers, and is not responsible for the direct and violent acts of nature which could not reasonably have been foreseen and guarded against or prevented by the exercise of a high degree of care, skill, and prudence, and if the defendant railroad company maintained its culvert and the railroad embankment at the point where the accident occurred in a good condition, and the same were safe for all emergencies which could reasonably have been anticipated by it, and at the time of the injury complained of defendant was in the exercise of the utmost degree of care and prudence, both in the matter of the maintenance of said embankment and in the operation of its trains over the same, then said defendant is not liable.

"If you find from the testimony that defendant was without negligence in the construction and maintenance of the culvert, and that the injury to plaintiff was the result of an inevitable accident, and such as no human foresight could avert, then the defendants would not be liable, and your verdict must be in favor of the defendant.

"The measure of diligence required in the maintaining of bridges and culverts by railroad companies is that the character and size of the stream, the extent and situation of the agricultural land about it, and the nature of the rainfalls and floods affecting it shall be ascertained and provided for so far as the exercise of ordinary foresight, care, and skill can accomplish them, but there is no requirement that the recurrence of cyclones, cloudbursts, and the like shall be foreseen, or guarded against, though it is known that they have many times happened. And, therefore, if you find from the proof that the culvert was of sufficient capacity to carry off safely all ordinary accumulations of water, and that the defendant constructed and maintained the same with due care and frequently inspected the same, and it appeared to be amply sufficient for all purposes, then the Court charges you that the company would not be liable for the injury suffered by the plaintiff from such extraordinary downpour of rain, or cloudburst as overtaxed the ca-

Railroad *v.* Kuhn.

pacity of said culvert and caused a washout in same."

Those propositions are sound, pertinent, and ample to present the defendant's theory of the catastrophe; and though different in phraseology, they really cover all material points in the declined instructions. It was not incumbent on the Court, therefore, to add those instructions, nor error to decline them. *Kaufman* v. *Fye,* 99 Tenn., 140; *Railroad* v. *Pugh,* 97 Tenn., 624; *Railroad* v. *Reagan,* 96 Tenn., 129.

It is not a matter against the charge in point of legal soundness, that the part just quoted carries the necessary implication, and another part actually states in substance that the defendant, to avoid liability for the natural consequences of the derailment, must show not only that it resulted from an unprecedented rain as a proximate cause, but also that the defendant was free from proximate negligence in connection with the condition and capacity of the culvert, track, and roadbed, and in the equipment and operation of the train. For, if the defendant's omission of duty in respect of any of those things concurred as a proximate cause with an unprecedented rain in producing the derailment, the defendant would be guilty of actionable negligence, notwithstanding the occurrence and harmful operation of such a rain as an "act of God" in the legal sense.

"It is universally agreed that if the damage is caused by the concurring force of the defendant's negligence and some other cause for which he is not responsible, including the 'act of God' or superior human force directly intervening, the defendant is nevertheless responsible, if his negligence is one of the proximate causes of the damage, within the definition already given. It is also agreed that if the negligence of the defendant concurs with the other cause of the injury in point of time and place, or otherwise so directly contributes to the plaintiff's damage that it is reasonably certain that the other cause alone would not have sufficed to produce it, the defendant is liable, notwithstanding he may not have anticipated or been bound to anticipate the interference of the superior force which, concurring with his own negligence, produced the damage. But if the superior force would have produced the same damage, whether the defendant had been negligent or not, his negligence is not deemed the cause of the injury." 1 Shear. & Red. Neg., Sec. 39; Hutchinson Car., Secs. 179, 180, 513, 515; *Beopple* v. *Railroad,* 104 Tenn., 427; 2 Thomp. Neg., 1085, 1087; *Express Co.* v. *Jackson,* 92 Tenn., 327; 4 Elliott on Railroads, Sec. 1457.

Nor was it error for the Court to tell the jury that, as to passengers, the defendant was legally bound to exercise "the utmost degree of

care and prudence, both in the matter of the maintenance of said embankment and in the operation of its trains over the same," and that "any neglect to use" such care and prudence, if operating as a proximate cause of the plaintiff's injury, would subject the defendant to liability for the damages sustained by him.

The assignment of error calls in question the phrase, "utmost degree of care and prudence," upon the alleged ground that it exacted greater care and diligence of the defendant than the law requires.

The exaction made in the charge is amply justified by the authorities already cited on that subject in a former part of this opinion. The adjudged cases and text-writers are unanimous in holding passenger carriers to a very strict accountability, the principal difference being in the phraseology of the rule, which some express in one form and others in other forms.

The formulation adopted by the trial Judge has heretofore met the approval of this Court (1 Sneed, 226; 1 Cold., 616; 99 Tenn., 264, 265), and probably occurs as frequently as any other to be found in the books.

The following are some of the many authorities in which the word "utmost," as in this case, is used to define the degree of care and prudence, or skill or caution, or diligence or vigilance or foresight, legally incumbent on passenger carriers,

namely: *Stokes* v. *Sallonstall,* 13 Peters, 190; *Pennsylvania Co.* v. *Roy,* 102 U. S., 456; *Dodge* v. *Steamship Co.* (Mass.), 2 L. R. A., 84; *Ingalls* v. *Bills,* 9 Mat, 1; *Railroad Co.* v. *Anderson* (Md.), 8 L. R. A., 673; *Coddington* v. *Railroad Co.,* 102 N. Y., 66; *Flint* v. *Norwich,* 6 Blatchford, 158; *Heucke* v. *Railroad,* 69 Wis., 401; *Pittsburg* v. *Hinds,* 53 Pa. St., 512; *Railroad* v. *Pittsburg,* 123 Ill., 9; *Railroad* v. *Messino,* 1 Sneed, 226; *Ferry Cos.* v. *White,* 99 Tenn., 264, 265; *Jackson* v. *Tallett,* 3 Stark, 37; 3 E. C. L., 307; 2 Rap. & M. Dig. of R'y Law, Sec. 139, and citations; Booth on Street Railways, Sec. 328; Ray's Neg. Imp. Du., p. 24; Wharton Law of Neg., Sec. 636; 1 Shear. & Red. Neg., Sec. 51, and notes; 2 Ib., Sec. 495, and notes; Hutchinson Car., Secs. 799, 800, 801, 501, and notes. These notes cite a large number of the other adjudged cases in which the word "utmost" has been approved in the connection stated.

The language used by this Court in *Railroad* v. *Messino,* supra, is as follows:

"When railroad companies engage in the business of common carriers they undertake that the road is in good traveling order and fit for use, and that the engines and carriages employed are roadworthy and properly constructed, and furnished according to the present state of the art, and, if an injury results from the imperfection

of the road, carriages, or the engines, the companies are liable, unless the imperfection was of a character in no degree attributable to their negligence. They are also bound for a due application upon the part of their servants and agents of the necessary attention, art, and skill, and if the injury to the plaintiff might have been avoided by the utmost degree of care and skill on the part of the agents and servants of the companies, they are liable." 1 Sneed, 226.

This Court employed the word "highest" in the same connection, and to express exactly the same thought, in *Railroad* v. *Elliott*, 1 Cold., 616; and other Courts have done likewise. *Le Barron* v. *Terry Co.*, 11 Allen, 315; *Taylor* v. *Railroad*, 48 N. H., 304, 316; *Dodge* v. *Steamships Co.* (Mass.), 2 L. R. A., 87, and note p. 84; Ib., 252, note; 13 L. R. A., 95, note; *Coddington* v. *Railraod Co.*, supra; *Heucke* v. *Railroad*, 69 Wis., 401; Boothe Street Railways, Sec. 328.

In the cases of *Railroad* v. *Derby*, 14 How., 486, and *Steamboat* v. *King*, 16 How., 474, and *Pennsylvania Co.* v. *Roy*, 102 U. S., 455, the Court remarked: "When carriers undertake to convey persons by the powerful agency of steam, public policy and safety require that they be held to the greatest possible care and diligence."

Other authorities, like the Court in one instruction in this case, giving still another expression

of the same rule of strict accountability, charge
passenger carriers with all that "human foresight"
can suggest for the safety of their customers.
*Christie* v. *Griggs,* 2 Camp., 79; *Gleeson* v. *Rail-
road,* 140 U. S., 443; *Stokes* v. *Saltonstall,* 13
Pet., 191; *Weed* v. *Railroad,* 5 Duer, 193; *Mav-
erick* v. *Railroad,* 36 N. Y., 378; 8 L. R. A.,
673, note; 2 Ib., 85, note; 2 Shear. & Red.
Neg., Sec. 495; Hutchinson Car., Secs. 500, 501,
502; Wharton Law of Neg., Sec. 636; Boothe
Street Railways, Sec. 328.

Judge Cooley says the carrier's legal undertak-
ing with his passengers is, "that, as far as
human foresight and care can reasonably go, he
will transport them safely." Cooley on Torts, 642.

Hutchinson (Sec. 501) indicates a preference
from the adjudged case, for the phrase, "as far
as human care and foresight will go" (which
seems to have originated with *Christie* v. *Griggs,*
2 Camp., 79, cited and followed in *Stokes* v.
*Saltonstall,* 13 Pet., 191, and other cases), saying,
however (Sec. 502) that it does not signify "all
the care and diligence of which the human mind
can conceive," but only "the highest degree of
practical care, diligence, and skill."

Another distinguished author thinks the true rule
deducible from the multitudinous adjudications, many
of which he cites in notes, is best defined when
it is stated that the carrier is bound to exercise

"the highest practicable care." 4 Elliott on Railroads, Secs. 1585, 1586, 1587, 1634.

An authority which has already been cited herein, says: "The law very wisely exacts from a common carrier of passengers for hire in the performance of his duties as such, the utmost care and skill which very prudent and skillful men would use under similar circumstances for their own protection; or, as it is sometimes expressed, he must use 'the highest degree of practicable care,' or extraordinary care; or must provide for 'safe conveyances so far as human care and foresight can secure that result;' and such a carrier 'is responsible for the slightest neglect to use such care.'" 2 Shear. & Red. Neg., Sec. 495.

And again: "It is the settled rule of the common law throughout the United States, and probably also in Great Britian and Ireland, that common carriers of persons, and especially railway conveyances, are liable for any damage suffered by their passengers which is proximately caused by the failure of such carrier to use the highest degree of prudence, and, in some cases, the utmost human skill and foresight."

This precise language is constantly used in charging juries, and it is sustained by such controlling authority as to make it useless to discuss its propriety at any length. But, while those words cannot be excepted to, the current of decis-

23 p—9

ions shows that a carrier is entitled to have them explained to the jury. The Courts do not hold that carriers are bound to use the highest degree of prudence or. skill which could be conceived of as possible to man. They are only held to the highest degree which has been demonstrated by experience to be practicable. 1 Ib., Sec. 51.

In the case of *Pennsylvania v. Roy,* supra, the Court, after reviewing several of its former decisions, said: "These and many other adjudged cases, cited with approval in elementary treatises of acknowledged authority, show that the carrier is required, as to passengers, to observe the utmost caution characteristic of very careful, prudent men. He is responsible for injuries received by passengers in the course of their transportation which might have been avoided or guarded against by the exercise upon his part of extraordinary vigilance, aided by the highest skill. And this caution and vigilance must necessarily be extended to all the agencies or means employed by the carrier in the transportation of the passenger." 102 U. S., 456.

Thus it is seen, as already observed, that the authorities with unanimity hold common carriers of passengers to a strict accountability; that, notwithstanding great diversity of phraseology in defining the measure of their legal obligation to passengers, the various definitions are intended and understood to express substantially the same idea;

Railroad v. Kuhn.

and that perhaps no words are more generally used in that connection than those employed by the trial Judge in this case, namely: "The utmost degree of care and prudence."

The meaning, whether of one formula or another, is that the carrier is legally bound to exercise the greatest, highest, or utmost care, skill, and foresight that human, experience and observation and the known laws of nature suggest as conducive to the passenger's safety, and capable of being put into practice; or such active, solicitous care, skill, and foresight as intellegent, suitably trained, and very cautious persons would be expected to exercise for their own personal protection in the same business and surroundings, and with the instrumentalities required and employed.

Of the other assignments of error it suffices to observe generally that none of them present any erroneous action on the part of the Court below.

Let the judgment be affirmed.