NASHVILLE C. & ST. L. RY. *v*. KATZMAN.

(*Nashville*, December Term, 1952.)

Opinion filed April 25, 1953.

WALKER, HOOKER, KEEBLE, DODSON & HARRIS, of Nashville, for plaintiff.

THOS. O. H. SMITH, of Nashville, for defendant.

MR. JUSTICE GAILOR delivered the opinion of the Court.

In this case, Katzman sued the Railway for personal injuries (hernia) received while riding as a passenger on a day coach of the Railway between Tullahoma and Nashville. In the Circuit Court, after overruling motion for directed verdict, the Trial Judge approved a judgment of $750 against the Railway, which appealed to the Court of Appeals, and that Court, holding that the motion for directed verdict, should have been sustained, reversed and dismissed the case.

Plaintiff has filed petition for certiorari, in which he makes two specifications of negligence to support his allegation of liability against the Railway:

"Because the conductor, as the agent and servant of the defendant, knew, or should have known the two seats taken by the plaintiff were reserved to the Military Police and that such an occurrence would happen unless warning or notice was given to passengers that these seats were reserved.

"Because the conductor, as the agent or servant of the defendant, ratified and approved the misconduct of the Military Police."

Because the two lower courts had reached opposite results, and because neither the Court of Appeals in its opinion, nor the Defendant in its brief, had considered

the second proposition of Plaintiff, that the Railroad was liable on account of the ratification of its conductor, of the injuries inflicted upon Plaintiff, we granted the writ, and have heard argument.

The witnesses of the Railroad denied any knowledge of the occurrence, and we therefore, accept the facts as they were found from the account of Katzman and his witnesses, and credited by the jury. In the early morning of December 12, 1943, Katzman boarded a train of the Railroad at Tullahoma, after giving his ticket to the conductor at the door of the train and receiving back a stub of the ticket. The train was very crowded and there were few vacant seats. Katzman and a companion found two vacant seats and sat down. There was no sign to indicate that these two seats were reserved. Shortly, two soldiers, military police, came up and demanded that the seats be vacated, asserting that those seats were reserved for the military police. Katzman refused to vacate his seat unless he was ordered to do so by the conductor. Thereupon the military policemen jerked Katzman to his feet with sufficient violence to cause him the alleged injury. While Katzman and one policeman stood in the aisle arguing, the other policeman went and summoned the conductor. When the conductor came up, he told Katzman that he would have to vacate the disputed seat. Katzman did so, and walked off to another part of the train, where he had to stand until he reached Nashville.

There is no evidence to support Plaintiff's first proposition, that the Railroad or its employees should reasonably have anticipated the occurrence, and consequential injury to the Plaintiff.

On the contrary, all the evidence is that the two military policemen had made many trips on that very train, and that no trouble had occurred; that the Railroad gave

the military policemen no right to control civilian passengers, and that the military policemen, prior to the Katzman incident, had never exercised any such right; and there was absolutely no evidence that conditions were any different on the day Plaintiff was injured, from any other days, so far as conditions and circumstances of travel were concerned.

Doubtless, recognizing the effect of this lack of evidence, Plaintiff has filed a supplemental brief and discussed a New Jersey case, *Egner* v. *Hudson & Manhattan RR. Co.,* 109 N. J. L. 367, 162 A. 554, which allowed recovery against the Railroad because it had not supplied sufficient employees to protect its passengers from injuries received as a direct result of a continuing overcrowding of its trains. This New Jersey case, and the many similar cases allowing recoveries against carriers for injuries sustained on account of crowded conditions, are not in point here, because (1) Plaintiff's proven injury was not a direct result of crowding, but of the acts of the military police, (2) The cause of action stated in the declaration is that the conductor of the Railroad stood idly by while the police assaulted Plaintiff. Katzman might have been hurt, as he said he was hurt, in an empty car.

Passing to Plaintiff's second proposition, that the Railroad is liable because the conductor "ratified" the act of the military policemen in violently removing Katzman from his seat. Ratification is a principle of the law of agency, not of tort, but it is clear from the argument, that Plaintiff means by this proposition that, as he alleged in his declaration, the conductor, as the employee of the Railroad, after he became aware of the difficulty between the policemen and Katzman, did nothing to protect Katzman, but approved the actions of the police. This principle of liability of carriers is discussed in 10 Am.

Jur., Carriers, Sec. 1441, and 13 C. J. S., Carriers, Sec. 696, and from those discussions, it appears that the rule for determining negligence of the carrier is the same whether the employee of the Railroad should have reasonably anticipated that the third person would injure the passenger before the injury occurred, or whether, after the injury was being inflicted by the third person, the employee of the Railroad was apprised of what was occurring, and nevertheless, did nothing to prevent further injury.

We have a Tennessee case that illustrates the principle. In *Ferry Companies* v. *White,* 99 Tenn. 256, 41 S. W. 583, 38 L. R. A. 427, the passenger White, Plaintiff, received his injuries while he was a passenger on a steamboat on an excursion on the Mississippi River. The employee of the carrier company, who was in charge of the boat, was one Couch, who stood on the upper deck of the boat with other passengers engaged in target shooting with firearms. Not only did Couch do nothing to make the other passengers stop shooting, but he actively engaged in shooting, himself. During these exercises, one of the pistols was accidentally discharged through the roof of the deck, and caused the injury to White. This Court reasonably held that the Company was liable because its employee Couch, had done nothing to stop the shooting after he knew that it was taking place.

Other pertinent cases are considered in the annotation of L. R. A. 1918F, 817. *Ellinger* v. *Philadelphia, etc., Ry. Co.,* 153 Ga. 213, 25 A. 1132, 34 Am. St. Rep. 697, and *Sure* v. *Milwaukee Electric R. & L. Co.,* 148 Wis. 1, 133 N. W. 1098, 37 L. R. A., N. S., 724.

In the present case, we have no such situation as that presented by the White case, supra. According to Katzman's own testimony, there was no assault on him after

the conductor arrived on the scene. According to his own admission, as soon as the conductor told him that he would have to vacate the reserved seat, he left that part of the train, and went to another part, where he had to stand until he reached Nashville. On his own showing, Katzman received no injury after the conductor knew of the occurrence.

It results that the assignments of error must be overruled, and the judgment of the Court of Appeals affirmed.