Railroad v. Flake.

NASHVILLE, CHATTANOOGA & ST. LOUIS RAILWAY COM-
PANY *v.* JAMES FLAKE, by next friend.*

*(Jackson.*   April Term, 1905.)

1. **COMMON CARRIERS.** Vigilance required in protection of
passengers from injury by other passengers, and liability for
failure to perform such duty.

Common carriers of passengers are bound to exercise the utmost
vigilance and care in maintaining order and guarding the pas-
sengers against violence, from whatever source arising, which
might me reasonably anticipated or naturally be expected to
occur, in view of all the circumstances, and of the number and
character of persons on board; and whenever a carrier, through
its agents or servants, knows or has opportunity to know, of
threatened injury or might have reasonably anticipated the
happening of an injury, and fails or neglects to take the proper
precautions, or to use proper means, to prevent or mitigate such
injury, the carrier is liable.  *(Post, pp.* 675, 676.)

Case cited and approved:  Ferry Cos. v. White, 99 Tenn., 256.

2. **SAME.**  Same.  Case in judgment.

Where a number of drunken and boisterous passengers on a rail-
road train exploded dynamite sticks in the cars and on  the plat-
forms, and fired pistols, and  the  carrier's  servants,  though
knowing or having an opportunity to know of such acts, neg-
lected to take the proper precautions to prevent injury to oth-
ers, and the plaintiff, another passenger, was shot by the dis-
charge of a pistol in the hands of one of this drunken party, al-
leged to be accidental, the railroad is liable for the injury so
sustained.

*As to liability of carrier for assault upon passenger by strik-
ers, mobs, or third person, see note to Fewings v. Mendenhall
(Minn.), 55 L. R. A., 713.

Railroad v. Flake.

FROM HENDERSON.

Appeal from the Circuit Court of Henderson County. —LEVI S. WOODS, Judge.

T. A. LANCASTER, for Railroad.

BARHAM & DAVIS and M. F. OZIER, for Flake.

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

A boy thirteen years of age, while riding on one of the passenger trains of the plaintiff in error on the afternoon of the 24th of December, 1903, while en route from Huron, a small station on the line of the railway, to Lexington, in this State, was shot. He was wounded by a pistol fired by a party whose name was unknown, and this suit was brought to recover damages for the injury thus received, upon the theory that the conditions existing upon that train, which either were known or should have been known to those in charge, were such as to have caused them reasonably to anticipate this result, and, failing to exercise proper diligence, the plaintiff in error was liable. There was a verdict and judgment in favor of the plaintiff, and the case has been brought into

Railroad v. Flake.

this court for review. A number of errors have been assigned, all of which save one are disposed of in a memorandum opinion which is not intended for publication. The one not there embraced is regarded as of sufficient importance for an opinion to be carried into our reports.

The record shows that at Jackson, Tennessee, the train in question was boarded by a number of persons then under the influence of strong drink. These parties carried upon the cars bottles of liquor, from which they freely drank as the train proceeded. They were boisterous in manner and speech, and by their conduct attracted the attention and gave considerable alarm to other passengers. They had possession of dynamite sticks, on which they placed caps. These, on being struck upon the floor, exploded. These explosions were as loud as pistol shots. While one or more of these explosions took place in the coach in which the defendant in error was riding, the others were produced upon the platform outside. Young Flake entered the coach, in which he was sitting at the time he received his wound, at Huron. He took his seat just back of the water cooler, with his face fronting in the direction the train was moving. This coach was immediately in the rear of the smoking car. In it were crowded many passengers, filling all the seats and occupying the aisle. The parties who have been referred to as boisterous, or at least some of them, came occasionally into this coach, elbowing their way

Railroad v. Flake.

down the aisle, and after remaining for a few minutes, would retrace their steps, and on passing out they either stopped upon the platform or else would enter the smoking car. The passengers in this coach observed that they were under the influence of liquor. Loud and boisterous talking in the smoking car was heard. Much firing was done on the platform between the coach and the smoking car. This firing began soon after the train left Jackson, and continued at intervals until this boy was shot. Unquestionably, some of the explosions which occurred on this platform came from the use of dynamite sticks, but some were from the use of pistols in the hands of some of these parties. One of them made an effort to have a witness, whose testimony is in the record, shoot a negro, who, at one of the stations along the line of the road, rode for a short distance upon the steps of this smoking car while engaged talking to a friend on the platform, offering him a pistol for that purpose. The witness, however, declined the offer. Immediately after the firing of the shot that wounded young Flake, one of these rowdies, with a pistol in his hand, went out of the coach to the platform, and stated that his weapon had accidentally been discharged, and he had wounded a boy.

The employees in charge of the train testify that they saw no one with pistols, and heard no firing. They say that there were crowds collected at the stations along the railroad, consisting of whites and negroes, engaged in shooting firecrackers and otherwise making a noise

as such crowds will do in anticipation of Christmas. They further testify that there was some boisterous conduct in the smoker, which, however, was promptly suppressed by the manager of trains, who happened to be on board at that time. They deny that they knew, save for the single incident just referred to, of any improper conduct committed by any one, either on the platform or in the coaches making up that train. The jury evidently credited those witnesses who testified so positively with regard to the shooting of pistols and other explosives on the platform, as well as to the boisterous conduct in the coach, and believed, where so many persons were aware of these things, that the railroad employees either knew, or by the slightest diligence might have been informed of them. That the jury imputed the wound of this boy to the failure of those in control of the train to discharge their duty is evident from the verdict which was rendered. While it is true they could not foresee the wounding of the defendant in error, yet they should have anticipated that drunken ruffians armed with pistols, unless suppressed, would either accidentally or intentionally inflict injury upon their fellow passengers.

We think there is abundant evidence to support the verdict of the jury, and to indicate that they were inexcusably negligent in preserving order. The principle of law controlling in the case is that "wherever a carrier, through its agents or servants, knows, or has opportunity to know, of threatened injury, or might have reasonably anticipated the happening of an injury, and fails

or neglects to take the proper precaution, or to use proper means, to prevent or mitigate such injury, the carrier is liable." 5 Am. & Eng. Ency. of Law, p. 553.

This rule was applied in *Ferry Cos.* v. *White,* 99 Tenn., 256, 41 S. W., 583. In that case the court quoted and approved a clause from the charge of Shipman, J., given to the jury in a suit involving the liability of a steamer and its owners for an injury sustained by one passenger from the violence of a fellow passenger. This clause was as follows: "The defendants were bound to exercise the utmost vigilance and care in maintaining order and guarding the passengers against violence, from whatever source arising, which might be reasonably anticipated, or naturally be expected to occur, in view of all the circumstances, and of the number and character of persons on board."

Public policy requires the strict enforcement of this rule. No relaxation of it should be indulged by the courts. The comfort and safety of passengers who commit themselves to a carrier depend upon it. The facts of the present case eminently call for its application.

We are satisfied no error was committed by the trial judge in his charge, embodying as it did this rule of liability, and his judgment is therefore affirmed with costs.