R. H. NEVILLE *v.* SOUTHERN RAILWAY COMPANY.

(*Jackson.*   April Term, 1912.)

1. **COMMON CARRIERS.** Liability for station agent's unprovoked and unauthorized assault and battery upon a passenger, while transacting business in which the carrier had no interest.

It is the duty of a common carrier to exercise ordinary care to protect a passenger in its station or depot, while waiting to take passage on its train, against the negligent, wanton, or willful acts of its own servants, irrespective of the scope of the authority or grade of employment of the servant, and a breach of this duty by the carrier fixes its liability. Therefore, a common carrier is liable in damages for an assault and battery committed, without just cause or provocation, by its station agent on a passenger while in the station waiting for the arrival of a train, though it occurred while the two were engaged in a discussion concerning a matter of business in which the carrier had no interest whatever.

Cases cited and approved:   Ferry Co. v. White, 99 Tenn., 256; Traction Co. v. Lane, 103 Tenn., 382; Railroad. v. Shaw, 110 Tenn., 479; Railroad v. Flake, 114 Tenn., 676; Railroad v. Cheatham, 118 Tenn., 164.

2. **SAME.** Same. Principle on which the rule is based and from which it conclusively follows.

The carrier cannot escape liability for such act of its servant, upon the ground that it was unauthorized; for it was a breach of its legal duty from which the right of action flows. This rule is based upon the principle that it is the duty of the carrier's station agent to exercise ordinary care to protect a passenger from the turbulent or disorderly conduct of other passengers or persons in the station, and if he⦁stand by and allow a passenger to be insulted or injured, without any attempt to pre-

Neville v. Railroad.

vent the wrongful act, the carrier will certainly be liable; and it necessarily follows that, if the carrier is liable for the wrongful acts of other passengers and strangers allowed by the station agent, without any effort to prevent the wrongs, it will certainly be liable for such wrongs committed by the station agent himself. (*Post, pp.* 100, 101, 103, 104.)

Cases cited and approved: Ferry Cos. v. White, 99 Tenn., 256; Traction Co. v. Lane, 103 Tenn., 382; Railroad v. Shaw, 110 Tenn., 479; Railroad v. Flake, 114 Tenn., 676; Railroad v. Cheatham, 118 Tenn., 164.

FROM SHELBY.

Appeal from the Circuit Court of Shelby County (3d Division) to the Court of Civil Appeals, and by *certiorari* from the Court of Civil Appeals to the Supreme Court.—A. B. PITTMAN, Circuit Judge.

BELL, TERRY & BELL, for plaintiff.

CARUTHERS, EWING and R. E. KING, for defendant.

MR. JUSTICE BUCHANAN delivered the opinion of the Court.

This case is here on petition for *certiorari.* From an adverse verdict and judgment in the circuit court, rendered by direction of the trial judge, the plaintiff prosecuted his appeal, and the court of civil appeals reversed and remanded the cause for a new trial.

The theory of plaintiff, apparent in his declaration and proof (no evidence having been offered by defend

126 Tenn.—7

ant), was that at the time of the occurrence of the matter complained of the relation of passenger and common carrier existed between him and defendant. It was averred and proven that in the ticket office of defendant, located in its railway station at Germantown, Tennessee, the agent of defendant in charge of the ticket office and station committed upon the body of plaintiff an unwarranted, unprovoked, brutal, and painful assault and battery, in the presence of other persons in the station assembled, and at a time when plaintiff was waiting for the arrival of one of defendant's trains, bound for Memphis, on which he intended to become a passenger, for which passage he had already paid, and was the holder of a ticket issued by defendant showing his right to such passage.

It further appears that plaintiff was a colored school-teacher resident in Germantown, but teaching school in Memphis, who daily traveled to and from his work by means of defendant's train, that plaintiff was a man of good character, and that after reaching defendant's station, on the day in question, he was properly conducting himself in the station when the agent called him into the ticket office, also a part of the station, and engaged plaintiff in the discussion of a matter of business which the agent had undertaken to conduct between plaintiff and another, but in which the defendant had no interest whatever, and during the discussion of this business, the agent became, without just cause, greatly enraged, and committed the assault and bat-

tery about five minutes before the schedule time for the arrival of the train for which plaintiff was waiting.

Defendant, without controverting the facts recited, insists that from them its nonliability appears, that the rule *respondeat superior* is controlling, and that under this rule the moment plaintiff stepped into the ticket office at the invitation of the agent, intending there to transact other business than the pursuit of his journey to Memphis, he ceased to be an intending passenger, and was no longer under the protection of the carrier as such, and that the origin of the assault and battery, being a matter wholly foreign to the contract of carriage, was wholly personal between the agent as an individual and plaintiff as such, and wholly without the scope of the employment of the agent as such, and therefore that defendant is not in law liable to respond for the unlawful and unauthorized act.

It is clear that the trial judge, in directing the verdict, adopted defendant's view, and equally clear to us that he was in error. Plaintiff's declaration was in one count on the facts of the case, and on these his suit is manifestly based upon a breach by the defendant of its duty to him while he was a passenger waiting in its station for the arrival of one of its trains. We must look beyond the limits of the rule *respondeat superior* to find the controlling principle in this case.

The distinction above suggested is noted by Mr. Thompson in his work on Negligence, 'in discussing the doctrine of *respondeat superior,* where he says: "It must be borne in mind that, in cases of the expulsion

of trespassers from the vehicles of a carrier, the govern-ing principle is the rule of *respondeat superior,* which we are considering, and is entirely different from the principle which governs in a case of the wrongful ex-pulsion or other maltreatment of a passenger by the servants of the carrier. Such maltreatment is a viola-tion of the duty which'the carrier has assumed of trans-porting the passenger in safety, and it is quite imma-terial, in respect of his liability, by what kind or grade of servant the duty has been violated." 1 Thompson on Negligence (2d Ed.), section 564, p. 523.

We are therefore to look to the broader rule of lia-bility growing out of the relationship of passenger and carrier, and declared by the courts as a matter of sound public policy to be created by the establishment of ·that relationship. A fair statement of this rule, so far as the purposes of this case are concerned, is to be found in Hutchinson on Carriers in these words:

"The authority of carriers of passengers to make and enforce such reasonable regulations as are necessary to protect from annoyance, insult, or injury those who are invited to their depots or stations to become pas-sengers, cannot be questioned. And the willful or neg-ligent failure to make and enforce such reasonable regu-lations will render them liable in damages for any in-juries directly resulting to persons who repair there for the purpose of becoming passengers. But since such carriers are required to exercise only ordinary care to protect their passengers, or those intending to become such, from the turbulent or disorderly conduct of per-

Neville v. Railroad.

sons in their depots, it must appear, in order to establish a liablity against a carrier where an injury has arisen from such a source, that the agent in charge of the station knew, or had opportunity to know, that the injury was threatened, and that by prompt intervention he could have prevented or mitigated it. If, however, an agent in charge of the station stand by and allow a passenger, or one intending to become such, to be insulted or injured without any attempt on his part to prevent the wrongful act, the carrier will certainly be liable. So if he fails to guard against the long-continued and notorious acts of third persons, such as scuffling in the passageways by cabmen, and a passenger is thereby injured, the carrier must respond in damages." 2 Hutchinson on Carriers (3d Ed.), section 989, p. 1134.

In another textbook of acknowledged merit we find this:

"The purchase of a ticket at a station by one who is waiting to take a train constitutes him a passenger. The legal relation of carrier and passenger, unless it is terminated in a legal way, continues until the passenger is safely deposited at his destination, and until he has left, or has had a reasonable time in which to leave, the premises of the carrier. If, during the continuance of this relation, though after the passenger has left the train, he suffers injury in consequence either of the negligent, wrongful, or wanton tort of one of the carrier's servants, the carrier is liable." So says Sutherland on Damages, vol. 3, section 941.

In the same section last above quoted it is further said: "Whoever engages in the business impliedly promises that his passenger shall have this degree of care. In other words, the carrier is conclusively presumed to do what under the circumstances the law requires him to do. We say conclusively presumed, for the law will not allow the carrier, by notice or special contract even, to deprive his passenger of this degree of care. If the passenger does not have this degree of care, but, on the contrary, is unlawfully assaulted and insulted by one of the very persons to whom his conveyance is intrusted, the carrier's implied promise is broken, and his legal duty is left unperformed, and he is necessarily responsible to the passenger for the damages he thereby sustains." See Sutherland, vol. 3, section 941.

Mr. Cooley states the general principles thus : "The responsibility of the carrier begins when the passenger presents himself for the transportation; and this he may be said to do when he approaches the place of reception for the purpose. Therefore, if the carrier is negligent in respect to the platforms and other approaches provided for the use of passengers, and in consequence of their being in an unsafe condition, the person coming to be carried is injured, he may have his action therefor." Cooley on Torts, vol. 2 (3d Ed.), section 770, p. 1364.

In 6 Cyc., at page 601, it is said: "But so long as the passenger is being transported or is on the carrier's premises legitimately in connection with such transportation, and the servant is there employed about the

business of the carrier in his relation to the passenger, the duty of protection exists. Therefore the carrier is liable for assault upon a passenger by the conductor in charge of the train or car in which the passenger is riding, whether the assault is in the supposed interest of and discharge of the supposed duty to the carrier, or is made as the result of personal malice or desire for revenge for an affront." To support the above text notes 80 and 81 on the same page cite decisions from as many as twenty courts of last resort in different states of this Union.

The obligation of a common carrier to maintain safe approaches from its ticket office to its trains, even where a public street was the approachway used between the two points, was by this court enforced by judgment against the carrier in *Railroad* v. *Cheatham,* 118 Tenn., 164, 100 S. W., 902.

This court has said: "The contract to carry passengers is not one of mere toleration and duty to transport the passenger on its cars, but it also includes the obligation on the part of the carrier to guarantee to its passengers respectful and courteous treatment, and to protect them, not only from violence and insult from strangers, but also against violence and insult from the carrier's own servants." *Knoxville Traction Co.* v. *Lane,* 103 Tenn., 382, 53 S. W., 557, 46 L. R. A., 549, and authorities cited.

The principle set out above from *Knoxville Traction Co.* v. *Lane* was reaffirmed by this court in *St. Ry. Co.* v. *Shaw,* 110 Tenn., 479, 75 S. W., 713.

The general principle announced in 5 American & English Encyc. of Law, 553, "that whenever a carrier through its agents or servants knows or has opportunity to know of threatened injury, or might have reasonably anticipated the happening of an injury, and fails or neglects to take the proper precaution, or to use proper means, to prevent or mitigate such injury, the carrier is liable," was announced and approved in *Railroad Co. v. Flake*, 114 Tenn., 676, 88 S. W., 326, and it is there stated that the same rule was applied in *Ferry Companies v. White*, 99 Tenn., 256, 41 S. W., 583.

It is unnecessary in this case to discuss the degree of care which is required by law to be exercised by the common carrier for the safety and protection from insult and injury of a passenger, after he is aboard its vehicle, and in progress of transportation. This subject is fully discussed in *Railroad Co. v. Flake* and *Ferry Companies v. White*, supra, and the authorities in each of them cited. We are only concerned in the present case with the degree of care required while the passenger is in the station where the carrier has invited him to come and wait for his train, and where in response to such invitation the passenger is there waiting. In such case it is clear that the legal duty of the carrier is to exercise ordinary care in the protection of the passenger from insult or injury, whether caused by the negligence or by the willful or wanton acts of its own servants, irrespective of the scope of the authority or grade of employment of the servant, and a breach of this duty by the carrier fixes the liability. Under the facts of this

case the carrier cannot escape liability under its plea that the act of its servant was unauthorized, for it may be granted that the act was wholly without authority from the carrier, and yet the fact remains that by the act the legal duty of the carrier was breached, and from this breach the right of action flows, not because the carrier authorized the act, but because it did not prevent it by the exercise of ordinary care.

The judgment of the court of civil appeals was correct, and the prayer of petitioner is denied.