## HENRY P. TALL *vs.* THE BALTIMORE STEAM PACKET COMPANY.

*Appeal—Carriers—Liability of Carrier for Assault on Passenger by Fellow-Passenger—Proof of Negligence—Opinions of Witnesses—Evidence.*

Rulings on the admissibility of evidence and also a ruling in regard to the instructions to the jury should not be included in the same bill of exceptions. Essentially distinct propositions of law should be embraced in distinct bills of exception.

A carrier is not liable to a passenger for an injury caused by the wrongful act of another passenger, unless the carrier or his servants could have prevented the injury and failed to interfere after knowledge or notice that danger existed or was reasonably to be apprehended.

Plaintiff was one of a number of men in the smoking-room of a steam-boat. A quarrel occurred between two men who had been playing cards together. One of these men presently struck the other, who drew a pistol and fired in the direction of his opponent, but the bullet hit plaintiff, who was standing several feet distant. The captain of the boat was in the room, and when the quarrel arose a by-stander called to him and said that there was going to be a fight. As soon as the captain ascertained where the disturbance was he rushed to the combatants, but did not reach them until just after the shot was fired. In an action against the steamboat company to recover damages, *held*, that there was no legally sufficient evidence of any negligence on the part of the defendant or its servants to be submitted to the jury, since the captain had no knowledge or notice that such an injury was about to be inflicted in time to prevent it, and was not bound to infer from the mere fact of the quarrel between two persons that one of them would recklessly fire a pistol and injure another passenger not concerned in the quarrel.

In the above case, the witness who called the attention of the captain to the altercation, said that if the captain had responded promptly to his call he did not believe the affair would have occurred. *Held*, that this statement was merely the opinion of the witness and not competent evidence.

Another witness was asked if the above-mentioned quarrel was of sufficient violence and loudness to attract the attention of anyone in any part of the room who was not giving attention to what was going on there. The answer was that "if the captain had paid attention to it, it would have prevented the quarrel." *Held*, that this answer was properly struck out because merely an opinion, and it is for the Court or jury to determine from the facts in evidence whether the captain acted with appropriate promptness.

Two men playing cards for money on a steamboat quarrelled. Subsequently, one of them struck the other, who fired a pistol and the bullet injured plaintiff who was in the room but not concerned in the dispute. In an action against the steamboat company, evidence of a rule of the company prohibiting gambling on the boats is not admissible, because the probable result of a game of cards is not such an act of violence as this, and the question in the case being whether the defendant was guilty of negligence in not protecting plaintiff, the regulation as to gambling throws no light on that issue.

Appeal from the Superior Court of Baltimore City (RITCHIE, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD and SCHMUCKER, JJ.

*R. Lee Slingluff* (with whom were *Fielder C. Slingluff* and *Wm. T. Donaldson*) for the appellant.

The Court declined to hear *J. Southgate Lemmon* and *C. Baker Clotworthy* for the appellee.

McSHERRY, C. J., delivered the opinion of the Court.

There are several questions relating to rulings on the admissibility of evidence and one in regard to the granting of an instruction taking the case from the consideration of the jury, included in the only bill of exceptions which the record contains. This is an unusual and an erroneous way to present such essentially distinct propositions. The ruling on each question should form the subject of a separate exception. " We * * are," says this Court in *Ellicott v. Martin, &c.*, 6 Md. 517, "of opinion that each distinct exception which embraces an independent proposition of law, should be signed and sealed by the Court below, before it can be regarded as a valid exception. This remark does not apply to a series of consecutive prayers offered by the counsel. In such a case the ruling of the Court, in either granting, rejecting or modifying the prayers, may be regarded as a single act, and one exception, if properly taken and executed, may embrace the whole." Passing by this irregularity, though by no means intending thereby to establish a precedent which will be followed hereafter, we come to the case as we find it.

The defendant below—the appellee here—is a corporation owning a line of steamboats which ply between Baltimore and Norfolk. The plaintiff below—the appellant here—was in March, eighteen hundred and ninety-eight, a passenger on the Alabama, one of the appellee's boats. After getting his supper he went into the smoking-room of the steamer, where some twenty or more men-passengers were smoking and conversing. In the room there were several small tables and a number of chairs for the use of passengers. Shortly after the appellant went into the

smoking-room Captain Bohannon, who was in command of the vessel, also entered, and remained there in conversation with some of the passengers until the occurrences now to be briefly narrated took place.   At one of the tables in the smoking-room a passenger named Batten and another named Merritt were playing a game of cards for money, whilst others were looking on.   A dispute arose between the two players and Batten applied to Merritt a vile epithet. The latter then arose and left the room.   In a few minutes he returned, having his hand on his hip-pocket, and going up to Batten said something which was heard by only one witness.   Instantly Batten struck Merritt a heavy blow, knocking him down, the captain sprung forward simultaneously and intervened, but Merritt drew a revolver from his pocket and fired ; the bullet missed Batten and struck the appellant, who was standing some distance away.   It lodged in his elbow and severely wounded him.   For the injury thus inflicted the appellant brought this suit against the steamboat company.

The gravamen of the *narr.*—the sole ground upon which a right to recover is based—is the alleged negligence and want of care on the part of the defendant's servants and agents in failing to preserve order and to exercise proper control over its passengers.

Before adverting to the legal principles which lie at the foundation of the case, it will be necessary to state with a little more particularity the facts immediately surrounding and just preceding the shooting; and we will then determine, first, whether, as submitted to the jury, the facts created a liability on the part of the defendant ; and secondly, whether the rejected evidence was admissible, and if admissible whether, had it been admitted, it would have furnished any better ground for a recovery than existed after its exclusion.

Going back to the point of time when Merritt returned to the smoking-room with his hand on his hip-pocket— this being after Batten had applied to him an opprobrious epithet—the events that followed in rapid succession are

thus described by Mr. Beecham, one of the plaintiff's witnesses, and his description is not materially varied by the others who testified: Directly Merritt came in the witness looked over to Captain Bohannon and said "come here, come here, come here quick;" and as he looked back at the affair, and long enough for him to forget the fact that he had called the captain, and while his attention was entirely fixed upon what was going on, he heard a voice saying, "what is it, what is it," and he replied "there is going to be a fight." Just at that very moment Batten reached up with his right and knocked Merritt down.  When he, witness, heard a voice saying "what is it," he turned, and it was Captain Bohannon.  The captain had asked him that question and he immediately pointed over showing towards Merritt's back, which was turned towards him and said to the captain, "there is going to be a fight," and that very moment Batten struck up and struck Merritt with his right, and the captain jumped right into it and Batten then sprang over the chairs towards the bar-room, and Merritt immediately fired into the crowd in the direction of where the lamplighter is.  The witness was then asked: "After you called the captain, did the shooting take place before he came?" and he replied: "Oh, no, the shooting took place after he came, after he responded, after he answered me, at least after he called my attention, at least made the remark 'what is it, what is it,' and after that the shooting occurred, but it was very quick work; after he answered me, just at that moment, the man Batten raised up and struck Merritt, and I suppose the captain saw that part of the fracas also at the same moment, for he jumped right into the midst of it, but he was a little too late, and the pistol went off."

Now what, in these circumstances, was the duty which the carrier owed the passenger, and in what, if in any respect, was that duty disregarded?  The answer to these inquiries will decide whether the trial Court was right in withdrawing the case from the jury, even though it be conceded that all the evidence adduced by the plaintiff was true, and though

the legitimate inferences deducible from it be given due weight in connection with that evidence.

A carrier is not an insurer of the absolute safety of his passengers; yet he is bound to use reasonable care according to the nature of his contract; and as his employment involves the safety of the lives and limbs of his passengers, the law requires the highest degree of care which is consistent with the nature of his undertaking. *B. & O. R. R. Co.* v. *State, use of Hauer*, 60 Md. 449. This, though the measure of the carrier's duty as between him and his passenger in respect to the acts or omissions of the carrier and his servants towards the passenger, is not the standard by which his liability to the passenger is to be guaged or determined when intervening acts of fellow-passengers or strangers directly cause the injury sustained whilst the relation of passenger and carrier is subsisting. Such an injury, due in no way to defects in the means of transportation or to the method of transporting, or to an actual trespass by an employee whilst the relation of passenger continues and involving, therefore, no issues of negligence concerning the duty to provide safe appliances and competent and careful servants to operate them, but arising wholly from the independent misconduct of a third party, furnishes a ground of action against the carrier only when the carrier, or his servants, *could* have prevented the injury but failed to interfere to avert it. The duty of the carrier in such instances is, consequently, relative and contingent, not absolute and unconditional. It springs from a condition, not of the carrier's but of a third party's creation, coupled with a knowledge by the carrier's servants that the condition exists, and with time enough intervening between the acquisition of the knowledge and the infliction of the injury to enable the servants of the carrier to protect the passenger from the third party's misconduct. The negligence for which, in such cases, the carrier is responsible is not the tort of the fellow-passenger or the stranger, but it is the negligent omission of the carrier's servants to prevent that tort from being com-

mitted. The failure or omission to prevent the commission of the tort, to be a negligent failure or omission, must be a failure or an omission to do something which could have been done by the servant; and, therefore, there is involved the essential ingredient that the servant had knowledge, or with proper care could have had knowledge, that the tort was imminent, and that he had that knowledge, or had the opportunity to acquire it, sufficiently long in advance of its infliction to have prevented it with the force at his command. If this were not so, the mere tort of a fellow-passenger or a stranger would constitute of itself, the negligence of the carrier, and the carrier would be held answerable for wrongful acts of a third party, though the carrier's servants were, without fault, ignorant of the third party's purpose to make an assault and were, consequently, unprepared to avert it. Such a rule would make the carrier an absolute insurer of the safety of the passenger against the wrongful conduct of third persons, though, as between the carrier and the passenger in ordinary cases, the carrier's liability is made to depend on his or his servant's negligence. In *B. & O. R. R. Co.* v. *Barger*, 80 Md. 30, we said : If a conductor "has the opportunity to prevent an assault on a passenger in his charge, it is his duty to do so, and his failure to make a reasonable effort to protect the passenger from such assault, would make the company responsible." Or, as differently expressed in *Ill. Cen. R. R. Co.* v. *Minor*, 69 Miss. 710, "a common carrier is required to protect a passenger from an unprovoked assault of a fellow-passenger, if the conductor knew that it was threatened and could have prevented it with the assistance of employees and willing passengers." s. c., 16 L. R. A. 627, *and copious notes.* The overwhelming weight of judicial precedent sustains this view of the carrier's liability in such instances as are presented by the record before us. *N. J. Steamboat Co.* v. *Brackett*, 121 U. S. 645 ; *Lucy* v. *Ch. Great West. Ry. Co.*, 64 Minn. 7 ; s. c., 31 L. R. A. 551 ; *Ball* v. *C. & O. Ry. Co.*, 93 Va. 44 ; s. c. 32 L. R. A. 792 ; *Britton* v. *A. & C. A. L. R. Co.*, 88 N. C. 536 ; 5 *Am. & Eng. Ency. Law* (2nd ed.), 553.

The duty to protect the passenger against an assault by a fellow-passenger being, then, a qualified duty, and the responsibility for a failure to perform that duty arising only after the servant has neglected to act upon the knowledge, or upon the facts which ought to have imparted knowledge that the injury was threatened, do the facts in evidence bring this case within that rule? It seems to us quite clear that they do not. The affray was a sudden one. It undoubtedly grew out of the use of abusive language. But as soon as the attention of the captain of the boat was called to the conduct of the two men, and just as he was notified that there was "going to be a fight," and, therefore, *before* there was a blow struck, he rushed, or as the witnessed expressed it, "he jumped in," but too late to prevent either Batten from striking Merritt, or Merritt from firing his pistol. The first intimation he had of a threatened encounter between these two men was the warning given by Beacham and he responded at once. Had he been less prompt in interfering he was not bound to assume that the quarrel would develop into an affray in which a deadly weapon would be used; and the steamboat company can not be said to have been negligent because its servants failed to forsee that a pistol would be fired into a crowd of passengers, when the firing of a pistol was by no means a necessary or even a probable result of the trouble between the two men who had then ceased to play cards. It would stretch the liability of a carrier far beyond established limits if he were held accountable for an unexpected injury inflicted by one passenger upon another passenger, and if he were so held accountable solely because the servants in charge of the boat, or the train, or the coach upon which the injury happened, failed to anticipate or infer from the fact of a quarrel between two persons that one of them would recklessly fire a pistol and injure another passenger who was not concerned or involved in the quarrel at all. And yet that is precisely what must be laid down as the law if in this case the plaintiff is entitled to recover. Captain

Bohannon obviously had no knowledge that the shooting of a pistol was likely to occur—at least, it was not shown that he had such knowledge—and the witness who called his attention to the hostile attitude of the parties, indicated or suggested no such probability.   That a deadly weapon would be used was not a thing he was bound to assume. He acted with great and commendable promptness and interfered before the shot was fired ; and there was no evidence to show that he could have done more than he did do to quell the disturbance.   The fact that in spite of what he did do, the pistol was fired does not show that he did not do all that, under the circumstances, it was his duty to do.   The carrier's liability does not, in such cases, depend upon the naked fact that an injury happened—if it did, as already remarked, the measure of his duty would be that of an absolute insurer.   But it depends on the fact of an injury and the concomitant fact that the negligence of the carrier's servants, in omitting to prevent the doing of the act which produced the injury, actually caused the injury. Proof there must be of both of these constituent elements of the plaintiff's cause of action, but there was a total failure of evidence in the case at bar to support the latter of them.   Indeed, the evidence adduced by the plaintiff negatives the idea that the company's servants were negligent.

The case of *West Memphis Packet Co.* v. *White*, 99 Tenn. 256 (38 L. R. A. 427), so much relied on in the appellant's brief is in strict accord with the doctrine of the cases referred to in an earlier part of this opinion.   It is true a recovery was had in that case because the facts justified it and brought the defendant within the scope of the rule as to the carrier's qualified liability.   One of the general officers of the company having charge of the excursion boat permitted a number of passengers who were armed with guns and pistols to fire indiscriminately at objects in the water to the great alarm of many persons on board.   One of the passengers whilst handling a repeating gun accidently exploded a shell and injured the plaintiff, a fellow-passen-

ger.   Amongst the persons standing near the man who had the repeating gun was Couch, the party who advertised the excursion, and was a general officer of the company, and was in charge of the excursion.   " The evidence " said the Court, " shows that not only he had not endeavored to stop the firing, but he had encouraged it by actively participating in it."   He had time to stop this perilous and indiscriminate shooting which caused alarm to the passengers, was obviously dangerous and very likely to result in accidents ; but instead of interfering to suppress it he actually encouraged it and participated in it.   Of course when an injury did result under these conditions the company became answerable.

This is not a case to which the doctrine of *res ipsa loquitur* applies.   We discussed that doctrine in *Benedick* v. *Potts*, 88 Md. 52, and need not now repeat what has been so recently said in respect to it.   The injury sued for in this case is traceable to an act of a third party, and whether the carrier is responsible for the consequences of that act depends upon whether its agents could have prevented it. There is a difference between the physical act of a third person and the omission of the company which failed to prevent the doing of the act that caused the injury.   The carrier's liability arises only when there is evidence of a fact distinct from and forming no part of the act done by the third person.   In no sense, therefore, can the act of the fellow-passenger or of a stranger speak for, or characterize, the other and different thing—it cannot define the negligent omission—which must be proved as an independent proposition before the carrier's liability begins.

There was, for the reasons we have given, no error in the ruling which took the case from the jury on the evidence in the case.   Ought the proffered evidence, which was excluded, to have been admitted, or if it had been admitted would it have changed the result ?

The witness Beacham was asked this question :   " How long was it after you called the captain when the captain

came?" and he replied: "It is a difficult matter to fix
that.   I lost sight of the fact almost that I had called the
captain's attention at all when I heard this fuss ; but if the
captain had responded promptly I don't believe the affair
would have occurred."   Upon motion the last clause of the
answer, giving the belief of the witness, was stricken out.  The
witness Stiefel was asked:   " Was there a quarrel between
Merritt and Batten of sufficient violence and loudness to
have attracted the attention of any one in any part of the
room who was not giving attention to what was going on
in the room?" and he answered:   " If the captain had
paid attention to it, it would have prevented the quarrel."
This answer was on motion also stricken out.   There was
no error in either of these rulings.   In both, the opinion of
the witness was excluded.   The question at issue in the
case was for the jury, or for the Court, dealing with the
legal sufficiency of the evidence, to determine, and not for
the witnesses to decide.   It was for the jury, if the case
went to them, or for the Court, in dealing with the question
as to whether there was legally sufficient evidence to be
considered by the jury, to say from the facts in evidence
whether the captain acted with appropriate promptness, and
it was not the province of the witnesses to determine this
matter at all.   *Tucker* v. *State, use of Johnson,* 89 Md. 471.

The first and fourth grounds of error are one.   They
both involve the ruling which excluded from the jury proof
of the rules or instructions prohibiting gambling on the
boats.   These rules or instructions were irrelevant.   Had
they been introduced they would not have thrown any light
on the matter at issue.   If the captain really violated any
rule in permitting gambling on the steamer, that fact was
no evidence of negligence which contributed to the injury,
unless it can, either universally and invariably or, at least,
with reasonable probability, be predicated of every act of
gambling that it will end in such an act of violence.   The
argument is this :   The shooting followed the blow that
was struck; the blow followed the use of the abusive

epithet ; the epithet followed the quarrel, and the quarrel grew out of the game of cards ; therefore the game of cards produced the shooting, and as the game of cards was prohibited by the company's rules the company's servants were negligent in allowing it to be played. But this is neither sound reasoning nor actual fact. Until you can predicate of a game of cards as its necessary result, an assault, you have nothing but speculation—you may have a sequence of events which are purely accidental in their relation but are not inherently or necessarily the successive results of preceding causes.

As there was no error in entering judgment for the defendant—the steamboat company—that judgment will be affirmed.

*Judgment affirmed with costs above and below.*

(Decided December 6th, 1899).