873 A.2d 483

**Jennifer CORINALDI et al.**

v.

**COLUMBIA COURTYARD, INC., et al.**

**No. 1165, Sept. Term, 2004.**

Court of Special Appeals of Maryland.

May 3, 2005.

208

210

Stacie F. Dubnow (William Michael Mullen, on brief), Baltimore, for appellant.

Mark T. Mitzer, Baltimore, for appellee.

Panel EYLER, JAMES R., KENNEY, WILLIAM W. WENNER, (Ret., specially assigned), JJ.

EYLER, JAMES R., J.

Jennifer E. Corinaldi and Ronald Corinaldi, parents of Andre D. Corinaldi, decedent, appellants, filed suit in the Circuit Court for Howard County against Columbia Courtyard, Inc., Marriott International, Inc., Courtyard Management Corporation, and Hospitality Properties Trust, appellees. Appellants alleged that, on January 13, 2001, the decedent was shot and killed on the premises of a Courtyard by Marriott hotel, owned and operated by appellees (the hotel), and that appellees negligently caused or contributed to decedent's death.

The circuit court entered summary judgment in favor of appellees. On appeal, appellants' primary contention is that the court erred in entering summary judgment. Appellants also raise two other contentions. Prior to the entry of summary judgment, the court ordered that the issue of liability would be tried first with a separate trial on the issue of damages, if necessary, to occur at a time to be scheduled. Appellant contends the court erred in ruling that the damages portion of the trial would occur at a later date and, therefore, before a jury different from the jury that had decided the liability issue. Also, prior to the entry of summary judgment, the court granted appellees' motion to quash appellants' discovery request, which sought records from the Howard County Police Department concerning violent criminal activity that had occurred within a three mile radius of the hotel. Appellants contend the court erred in granting the motion.

We conclude that the circuit court erred in granting appellees' motion for summary judgment. We also conclude that the circuit court did not err in its decisions relating to bifurcation and discovery.

## FACTUAL BACKGROUND

There are disputes of fact, both in terms of conflicting evidence as to some of the underlying facts and conflicting inferences which could be drawn from the known facts. Ap-

pellees contend the disputed facts and inferences are not material and do not prevent the entry of summary judgment.

In analyzing the entry of summary judgment, we shall consider the evidence in the light most favorable to appellants and resolve all factual disputes in favor of appellants. While, as part of our discussion, we may identify certain matters in dispute, because of the procedural context, it is not necessary that we identify all matters in dispute, and we have not done so.

On January 13, 2001, the decedent attended a surprise birthday party given by Tanette McMillan for Lakecia Mack. The party was held in two adjoining guest rooms at the hotel. Some of the male attendees got into an argument, and an attendee in one of the guest rooms shot through a closed door, hitting and killing the decedent in the adjoining guest room.

There was evidence that, a week before the party, Ms. McMillan, age 19, went to the hotel to inquire about rooms. Ms. McMillan spoke to a relatively new employee of the hotel, George Rock. Mr. Rock, age 17, knew a friend of Ms. McMillan, who accompanied her to the hotel. Ms. McMillan testified, at her deposition, that she told Mr. Rock about her plan to have a birthday party in the rooms. Mr. Rock showed connecting rooms to Ms. McMillan and offered to procure one of the rooms for her at his employee discount. There was evidence that the hotel had a policy of discouraging parties in guest rooms. Mr. Rock, at his deposition, testified that he was unaware of the hotel policy discouraging parties, and that he did not know Ms. McMillan was going to hold a party in the guest rooms.

On January 13, 2001, between 8:00 p.m., when the first guests arrived, and 10:55 p.m., the approximate time of the shooting, two employees were in the hotel. Kristina Brown, age 19, who had been employed at the hotel for four months, was working at the front desk. Ms. Brown was the person in charge. The other hotel employee, who we shall refer to as Mr. M., age 43, a long term employee of the hotel, was responsible for maintenance and housekeeping. Mr. M. was

not aware of a hotel policy discouraging parties in hotel rooms. Neither Ms. Brown nor Mr. M. had received training in hotel safety and security.

Mr. M.'s mother testified that Mr. M. was diagnosed as mildly retarded when he was young, but there is no evidence that it interfered with his ability to do his job. The record contains information from Mr. M.'s personnel file, which indicates that he was disciplined on several occasions during his long term of employment, but there is nothing to connect that information with the events in question.

Between the hours of 8:00 p.m. and 11:00 p.m., a party occurred in the two rooms rented by Ms. McMillan. Attendees arrived at various times, either through the front lobby or a side door near the rooms. Most of the attendees arrived after 9:00 p.m. While the total number of attendees is in dispute, estimates range between thirty and fifty, predominantly male, attendees. The majority of attendees were high school students, between 16 and 18 years of age. There is evidence that some of the attendees had consumed alcoholic beverages before they arrived, and that some consumed alcoholic beverages at the party. The beverages were not supplied by appellees.

Some of the people who attended the party entered through the lobby and walked by the front desk. Ms. Brown and Mr. M. noticed people entering and walking by the front desk. Sometime after 9:00 p.m., one or both of the hotel employees became aware that persons in Ms. McMillan's rooms were letting other persons in through a side entrance to the hotel, located near the rooms, which was locked from the outside. Several attendees testified, in depositions, that the party was very loud and could be heard in the hallway near the lobby.

Also sometime after 9:00 p.m., an elderly couple, who were guests of the hotel, complained about teenagers "hanging out" around the side entrance door. On two occasions, Mr. M. knocked on the door of one of the rooms and requested the occupants to lower the noise level and stop letting people in through the side door.

Ms. Brown and Mr. M. called their manager, Maurice Knox, who was not on the hotel premises, two or three times between 9:00 p.m. and the time of the shooting. The conversations were to inform Mr. Knox about the party and the complaint about "kids hanging out by one of the entrance doors." At 10:30 p.m., apparently in response to being told that persons were entering through the side door, Mr. Knox told Ms. Brown and Mr. M. to ask everyone to leave. There is some evidence that Ms. Brown called the room to request that the party end, and Ms. McMillan agreed that everyone would leave, but more attendees continued to arrive, even after 10:30 p.m.

At some point prior to the shooting, some of the male attendees, including Jeff Thompson and Shamal Chapman, got into an argument, and there were threats of violence. At approximately 10:35 p.m., Ms. McMillan separated the persons who were arguing by placing them in separate rooms. They continued to argue and make threats through the connecting door.

At approximately 10:45 p.m., the decedent entered the hotel through the front lobby, accompanied by several friends. When the decedent entered one of the two adjoining rooms, he saw an individual who appeared to be upset and who was beating on the door separating the two rooms. The decedent pulled him away and tried to quiet him. Someone in the other room discharged a handgun. The bullet passed through the closed door and struck and killed the decedent.

Also, at approximately 10:45 p.m., Ms. McMillan went to the front desk and advised Ms. Brown that there were several people in the rooms she did not know, that the party was getting out of control, and that one of the attendees had a gun. Ms. Brown asked Mr. M. to call the police, and Ms. Brown called Mr. Knox. A few minutes later, another female came running down the hall, screaming that two people had been shot. According to a 911 record, a call from the hotel was connected with the 911 operator at 17 seconds before 10:55 p.m. The first police officer arrived at the hotel approximately

three minutes later. The shooting occurred between 10:53–10:55 p.m. There is evidence in the record that the shooter was Shamal Chapman, and that he arrived at the party between 9 and 10:30 p.m.[1]

On October 23, 2001, appellants filed a complaint against appellees, and on April 25, 2003, they filed an amended complaint. On April 16, 2004, appellees filed a motion for summary judgment on the ground that, as a matter of law, they had committed no acts of negligence proximately causing the decedent's death. On July 22, 2004, the court granted the appellees' motion.

For purposes of the motion, the court expressly assumed that the decedent was an invitee of Ms. McMillan. The court held that there was no "special relationship" between appellees and the decedent, and that appellees owed decedent only the duty of reasonable care. The court further held that, "[u]nder the facts and circumstances established in this record, reasonable care would not have prevented the unforeseeable act of a second degree depraved heart murder committed by shooting through a closed door at persons unknown on the other side." In so ruling, the court concluded, as a matter of law, that the harm to decedent was unforeseeable and that, even if the hotel had acted reasonably, the harm to decedent could not have been prevented.

Prior to the entry of summary judgment, the court, by order dated May 17, 2004, granted appellees' motion to quash appellants' notice of deposition *duces tecum* directed to the custodian of records of the Howard County Police Department. The notice requested production of records regarding all violent crimes committed in the calendar years 1999 and 2000 within a five-mile radius of the hotel.[2]

---

1. Shamal Chapman was criminally charged with the shooting, but a jury acquitted him of the charges.

2. There is some discrepancy between the request for documents contained in appellants' notice of deposition *duces tecum*, which indicates that all crimes within five miles of the hotel should be disclosed, and the appellant's subsequent response to appellees' motion to quash,

Also prior to the entry of summary judgment, and after granting appellees' motion to try the issues of liability and damages separately, the court, by order dated June 22, 2004, provided that, if the jury found in favor of appellants on liability, the court would schedule a settlement conference. If the case failed to settle, a trial on damages would be scheduled. According to appellants, the necessary implication of the order was that the issues of liability and damages would be tried by two different juries.

## DISCUSSION

The primary issue presented in this case is whether appellees, as innkeepers, had a duty to take affirmative action to protect the decedent, an invitee of a guest of the hotel, from the criminal actions of an unknown third party. Appellants contend the court erred in holding that the intentional act that resulted in the decedent's death was unforeseeable and unpreventable as a matter of law, and in holding that no "special relationship" existed between appellees and the decedent, an invitee of a hotel guest.

### I. *Standard of Review*

On July 22, 2004, the circuit court granted appellees' motion for summary judgment. Whether summary judgment was properly granted is a question of law. *Eng'g Mgmt. Servs. v. Md. State Highway Admin.*, 375 Md. 211, 229–30, 825 A.2d 966 (2003). Therefore, we review the decision of the circuit court under the *de novo* standard. *Id.* at 229, 825 A.2d 966. When reviewing a case in which the trial court granted summary judgment, we first determine if the trial court correctly concluded that there was no genuine dispute as to any material fact. The mere presence of a factual dispute will not render summary judgment improper. *See Beatty v. Trailmaster Products, Inc.*, 330 Md. 726, 738, 625 A.2d 1005 (1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–

---

which states that only crimes within a three mile radius need be disclosed.

48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). We view the record in the light most favorable to the non-moving party, construing all facts, and all reasonable inferences from the facts, against the movant. *Jurgensen v. New Phoenix*, 380 Md. 106, 114, 843 A.2d 865 (2004). When we do so, if we conclude that summary judgment was appropriate, we can affirm. *See Remsburg v. Montgomery*, 376 Md. 568, 579, 831 A.2d 18 (2003).

## II. *Negligence*

 A properly pleaded claim of negligence includes four elements. The plaintiff must prove:

> (1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual loss or injury, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty.

*Todd v. Mass Transit Admin.*, 373 Md. 149, 155, 816 A.2d 930 (2003) (quoting *Muthukumarana v. Montgomery County*, 370 Md. 447, 486, 805 A.2d 372 (2002) (quoting *Valentine v. On Target, Inc.*, 353 Md. 544, 549, 727 A.2d 947 (1999) (quoting *BG & E v. Lane*, 338 Md. 34, 43, 656 A.2d 307 (1995)))). Whether a plaintiff has presented sufficient evidence of the elements of negligence is generally a question for the fact finder, but the existence of a legal duty is a question of law to be decided by the court. *Todd*, 373 Md. at 155, 816 A.2d 930 (citing *Valentine*, 353 Md. at 549, 727 A.2d 947). When the existence of a legal duty depends on a determination of a dispute of material fact, the facts should first be determined by the fact finder. *See Walpert, Smullian & Blumenthal, P.A. v. Katz*, 361 Md. 645, 693, 762 A.2d 582 (2000) (holding that the determination of whether contractual privity existed, giving rise to a legal duty, was a necessary preliminary determination to be made by the jury).

 The analysis of a negligence action usually begins with the question of whether a duty existed.

In determining the existence of a duty, we consider, among other things:

> The foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered the injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved.

*Ashburn v. Anne Arundel County,* 306 Md. 617, 627, 510 A.2d 1078 (1986)(quoting *Tarasoff v. Regents of Univ. of California,* 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334, 342 (1976)).

██ Foreseeability is a very important factor, but "its existence alone does not suffice to establish a duty under Maryland law." *Remsburg v. Montgomery,* 376 Md. 568, 583, 831 A.2d 18 (2003). This point is illustrated by the general rule that there is no duty to protect a victim from the criminal acts of a third person in the absence of a statute, contract, or other relationship between the party in question and the third person, which imposes a duty to control the third person's conduct, or between the party in question and the victim, which imposes a duty to protect the victim. *Bobo v. State,* 346 Md. 706, 715, 697 A.2d 1371 (1997); *Scott v. Watson,* 278 Md. 160, 166, 359 A.2d 548 (1976); Restatement (Second) of Torts § 314; Restatement (Second) of Torts § 315 adopted in *Lamb v. Hopkins,* 303 Md. 236, 245, 492 A.2d 1297 (1985).

██ The Restatement (Second) of Torts §§ 314–320, addresses the duty to act for the protection of others. It is important to note that the general rule set forth above, which appears in Restatement § 314 and § 315, applies even though the party in question had actual knowledge that harm was imminent or the party had knowledge of facts that made harm foreseeable.

██ The general rule does not apply when a "special relation" exists between the party in question and the third person, or between the party in question and the injured

party. Restatement (Second) of Torts § 315. Restatement (Second) of Torts § 314A and §§ 316–320 describe special relationships that may give rise to a duty. The term "special relation," as used by the Restatement, and relevant case law, means simply a relationship that gives rise to a duty to exercise reasonable care. It should not be confused with those instances when the same or similar term is used to describe a greater duty than that of the usual duty to exercise reasonable care.

Appellants do not contend that appellees had a duty to control the conduct of the third person in this case, whether the shooter is an unknown invitee at the party, or Shamal Chapman. Indeed, there is no basis for such a contention. The Restatement (Second) of Torts §§ 316–320 addresses the limited circumstances under which the duty to control the conduct of a third person arises, none of which are applicable in this case.[3]

Appellants argue that appellees had a relationship with the decedent, as an invitee of a hotel guest, that gave rise to a duty to protect him from the criminal acts of the unknown shooter. Restatement (Second) of Torts § 314A, adopted in *Southland Corp. v. Griffith*, 332 Md. 704, 719, 633 A.2d 84 (1993), sets forth certain relationships which give rise to a duty to protect, including those between a common carrier and its passengers, an innkeeper and its guests, and a possessor of land and its invitees. We must determine whether a duty arose under the facts of this case.

## A. *Duty of an Innkeeper*

■ As indicated above, the relationship of innkeeper and guest is sufficient to give rise to a duty. In early common law,

---

**3.** Restatement (Second) of Torts § 316 (parent has a duty to control conduct of minor child); § 317 (master has duty to control conduct of servant); § 318 (possessor of land or chattels had duty to control conduct of licensee); and § 319 (person in charge of another with dangerous propensities has duty to control conduct).

Section 320 imposes a duty to protect a person in custody. That concept is clearly not applicable here.

an innkeeper was an insurer of the safety of its guests and was strictly liable for injury to its guests. *Lovelace v. Anderson*, 366 Md. 690, 719, n. 7, 785 A.2d 726 (2001). As embodied in the Restatement (Second) of Torts § 314A, the duty of an innkeeper to its guests was later changed to a duty of reasonable care. *See, e.g., Lovelace*, 366 Md. at 719, 785 A.2d 726; *Roueche v. Hotel Braddock*, 164 Md. 620, 622–628, 165 A. 891 (1933); *Treiber v. Burrows*, 27 Md. 130, 143–47 (1867); *Giles v. Fauntleroy*, 13 Md. 126, 137 (1859); *Apper v. Eastgate Assocs.*, 28 Md.App. 581, 586, 347 A.2d 389, (1975), *modified on other grounds and affirmed*, 276 Md. 698, 350 A.2d 661 (1976). *See also Nalee, Inc. v. Jacobs*, 228 Md. 525, 529, 180 A.2d 677 (1962).

 We shall assume, as did the circuit court, that the decedent was an invitee of Ms. McMillan, a guest of the hotel. Generally, a property owner owes the same duty to the guest of an invitee as it owes to the invitee himself. *See generally Matthews v. Amberwood Assocs. Ltd. P'ship, Inc.*, 351 Md. 544, 554, 719 A.2d 119 (1998) (citing *Landay v. Cohn*, 220 Md. 24, 27, 150 A.2d 739 (1959)). Thus, the relationship between appellees and the decedent was such as to give rise to a duty to exercise reasonable care.

 Having established that the relationship between appellees and decedent was sufficient to support a duty, the question then becomes the extent of knowledge necessary to establish a duty. Ordinarily, a possessor of land is under no duty to protect an invitee from harm until the possessor knows or should know that the acts of a third party who causes harm are occurring or are about to occur. The duty may be based on knowledge of events, or on past experience that indicates a likelihood of conduct by third persons in general, or conduct by a particular individual who is likely to harm an invitee.

Appellees urge us to apply a prior similar crimes test, whereby, in order to impose a duty on an innkeeper requiring the innkeeper to protect individuals on their premises from

the criminal acts of third parties, it must be shown that prior similar crimes against persons had occurred on the premises, putting the innkeeper on notice that such actions were foreseeable. Appellees rely primarily on *Scott v. Watson*, 278 Md. 160, 359 A.2d 548 (1976), *Smith v. Dodge Plaza Ltd. P'ship*, 148 Md.App. 335, 811 A.2d 881 (2002), and *Moore v. Jimel, Inc.*, 147 Md.App. 336, 809 A.2d 10 (2002), for the proposition that, unless similar crimes have occurred on the premises, a reasonable jury could not find that the crime is foreseeable.

In making this argument, appellees recognize that a duty may arise based on knowledge of prior incidents but fail to recognize that a duty may arise based on knowledge of current events. While we agree that the decisions relied on by appellees hold that prior instances of similar crimes on the premises in question may give rise to foreseeability, and thus, to a duty to protect, these cases clearly do not state that prior instances are the only circumstance under which such a duty may arise. To read these opinions in that manner would make the first occurrence of any crime at any particular property unforeseeable as a matter of law, regardless of the facts putting the possessor of land on notice of the imminent harm, an untenable result.[4] See Restatement (Second) Torts section 344 . (a possessor of land who holds it open for business purposes is subject to liability to business invitees for harm

---

4. We do not require that an unfortunate event occur more than once before we find a duty to act, especially when the facts and circumstances leading up to the event clearly presage its occurrence. A court must examine the totality of the circumstances to determine if a duty to prevent the unfortunate occurrence arose. *See Crinkley v. Holiday Inns, Inc.*, 844 F.2d 156, 160–61 (4th Cir.1988) (holding that foreseeability, which may be shown by all relevant evidence, determines whether a duty to protect business invitees against criminal acts of third persons will be imposed in a given case). Even in *Scott v. Watson*, which is relied upon by appellees, the Court did not hold that a history of prior criminal activity on a landlord's property was the only relevant criteria to be used in determining the reasonable measures that a landlord must undertake to fulfill its duty of due care. Rather, the Court emphasized that the test for determining the nature and scope of the landlord's duty is what is reasonable under all of the circumstances. 278 Md. at 168–69, 359 A.2d 548.

caused by negligent or intentional acts of third persons, if possessor fails to exercise reasonable care to discover that such acts are being done or are likely to be done).

Speaking generally, there are three possible factual scenarios when an injured party seeks to hold the possessor of land liable for injuries inflicted by the intentional act of a third person. In most of the reported cases, an assailant entered the premises without invitation and without the knowledge of the defendant. In those cases, the plaintiff's claim was based on an asserted duty to eliminate conditions that contributed to the criminal activity, such as providing security personnel, lighting, locks, and the like. The asserted duty was based on knowledge of prior similar incidents, not on knowledge of facts relating to the incident in question and prior to its culmination.[5] In *Smith*, the claim was by a patron of the business and the assailant was another patron, but the claim of negligence was based on prior criminal activity generally, and not on knowledge of prior behavior of the assailant or knowledge of facts leading up to the harm.[6]

---

**5.** *See Scott v. Watson*, 278 Md. 160, 359 A.2d 548 (1976) (suit against owner of apartment building for murder of tenant in a common area parking garage-claim of negligence was knowledge of prior criminal activity on premises and failure to take steps to reduce possibility of future criminal activity); *Smith v. Dodge Plaza Ltd. P'ship*, 148 Md.App. 335, 811 A.2d 881 (2002) (suit against owner of nightclub for injury to patron who was attacked by another patron with a knife-claim of negligence was based on prior instances of behavior by patrons on the premises and failure to take appropriate steps); *Moore v. Jimel, Inc.*, 147 Md.App. 336, 809 A.2d 10 (2002) (suit by patron of bar against bar owner as a result of the patron being raped while using the bathroom-claim of negligence was based on an alleged failure to provide security, not knowledge relating to the incident in question); *Schear v. Motel Mgmt. Corp. of America*, 61 Md.App. 670, 487 A.2d 1240 (1985) (suit by guest against hotel for the value of items stolen from the guest's room-claim of negligence based on inadequate security when the defendant knew or should have known that greater security was necessary because of prior similar incidents).

**6.** The plaintiff based the negligence claim on prior unruly and disruptive behavior by patrons on the premises. We noted that there were two prior instances involving violence, neither with a weapon. We held that the evidence was insufficient to give rise to a duty.

*Univ. of Maryland v. Rhaney,* 159 Md.App. 44, 858 A.2d 497 (2004), *cert. granted,* 384 Md. 448, 863 A.2d 997 (2004), represents the second possible factual scenario. In that case, an invitee/tenant assaulted another invitee/tenant, and the injured party sued the invitor/landlord. The plaintiff's claim of negligence was based on knowledge possessed by the invitor/landlord with respect to prior conduct of the *assailant* that allegedly made the assault foreseeable and preventable.

This case presents the third possible factual scenario. Appellants' claim is not based on prior similar incidents, either generally or involving the unknown shooter, nor do appellants contend that appellees failed to eliminate an unsafe condition on the property. Instead, appellants' case is based on an assertion that appellees had knowledge of events occurring on the premises, prior to and leading up to the assault, which made imminent harm foreseeable.

Appellants cite various Maryland cases involving the duty owed by a possessor of land or chattels to a party who is injured by the intentional act of a third party while on the possessor's property. Appellants rely most heavily, however, on a common carrier case, the recent Court of Appeals' opinion in *Todd v. Mass Transit Admin.,* 373 Md. 149, 816 A.2d 930 (2003), for their conclusion that, on the evidence presented, appellees' employees had sufficient knowledge to give rise to a duty to protect the decedent.

 Appellees argue that *Todd* is not applicable because it is a common carrier case, and because a duty greater than that of reasonable care is owed by a common carrier to a passenger. We agree with appellants that *Todd* is instructive. In *Todd,* the Court of Appeals discussed its prior opinion in *Tall v. Baltimore Steam–Packet Co.,* 90 Md. 248, 44 A. 1007 (1899), and reaffirmed the distinction between a common carrier's duty to its passenger with respect to acts or omissions of its employees—described as the highest degree of care to provide safe means and methods of transportation for its passengers—and the duty owed to protect passengers from the intentional acts of third parties, including other passen-

gers—a duty of reasonable care dependent upon the carrier's knowledge prior to the injury. *Todd,* 373 Md. at 157, 816 A.2d 930 (quoting *Tall,* 90 Md. at 253, 44 A. 1007). The *Todd* Court concluded that a common carrier has a duty to take affirmative action to protect its passengers from an assault by a third party if the carrier, in the exercise of due care, knew or should have know that the assault was imminent (foreseeable), well enough in advance of the assault to have prevented it (preventable). *Todd,* 373 Md. at 159, 816 A.2d 930. We conclude that the same standard applies with respect to innkeepers.

If we conclude that no jury could reasonably find under the facts that were known or should have been known by appellees, that the injury to decedent was both foreseeable and preventable, then appellee had no duty to take affirmative action to prevent injury to decedent, and the circuit court's decision to grant appellees' motion for summary judgment was not erroneous.

### B. *Foreseeability and Preventability*

Appellants maintain that, based on information relating to the party in the hotel rooms and the conduct of attendees, appellees knew or should have known that the attack on the decedent was imminent. Appellants further contend that appellees knew or should have known of the imminent harm with adequate time and available resources to have prevented or mitigated the harm to decedent. Only if our examination of the record reveals facts that support both of appellants' contentions, may we reverse the circuit court's order granting appellees' motion for summary judgment.

The evidence would permit a jury to find that agents of appellees, Ms. Brown and Mr. M., from the noise that was audible in the hallways of the hotel, and from their observation of groups of youths passing through the lobby, knew or should have known by 8:00 p.m., that there was a party in the rooms rented by Ms. McMillan. Most of the party's attendees arrived after 9:00 p.m. and closer to 10:00 p.m. At some point prior to the shooting, appellees' agents knew that the party was noisy. While the timing is very fuzzy, sometime on or

before 10:15, appellees' agents also knew people were being admitted to the hotel through a side door. Mr. M. went to the rooms twice prior to the shooting, and asked the occupants to reduce the noise level and to stop letting people in through the side door.

At approximately 10:30 p.m., male attendees got into a loud argument. There is no evidence that hotel employees knew of the argument, but in the same general time frame, Ms. Brown called her supervisor, who was off premises, and he advised her to tell the occupants to end the party. At 10:35 p.m., female attendees of the party separated the male attendees who were arguing and closed the connecting door between the rooms. At approximately 10:45 p.m., Ms. McMillan went to the front desk and advised Ms. Brown that the party was out of control, and that someone at the party had a gun. Ms. Brown advised Mr. M. to call the police. According to a 911 record, the call was placed 17 seconds prior to 10:55 p.m. The first officer arrived on the scene approximately three minutes later. The shooting occurred between 10:53 and 10:55 p.m.

In *Todd*, the Court of Appeals reversed the entry of summary judgment in favor of the defendant and remanded the case for trial. *Id.* at 163, 816 A.2d 930. After boarding the bus upon which plaintiff was riding, a group of fifteen to twenty youths proceeded to "irritate" and "curse" other passengers. *Id.* at 152–153, 816 A.2d 930. Several passengers complained to the bus driver about the actions of the youths. *Id.* at 152, 816 A.2d 930. About five minutes after boarding, one of the youths struck plaintiff in the back of the head. *Id.* at 152–153, 816 A.2d 930. After a short verbal altercation, the entire group physically attacked plaintiff. *Id.* at 153, 816 A.2d 930. The attack lasted four or five minutes before the bus driver stopped the bus and hit the panic button, allowing the attackers to flee before the police arrived. *Id.* The Court concluded that a jury could reasonably find that the bus driver had sufficient time within which to take action to remove the threat of the assault. *Id.* at 163, 816 A.2d 930. The Court further held that the bus driver arguably possessed the ability to prevent the attack. *Id.* Thus, the Court concluded, a jury

question was raised whether the bus company had a duty to protect the plaintiff from the attack of the youths. *Id.*

■ Notably, unlike in *Todd,* the party at appellees' hotel took place outside of the actual physical presence of agents of appellees who could observe the behavior of the attendees. Appellees' knowledge is limited to what was reported to them and to what they should have known. Mr. M. went to the door of the suite twice on the evening in question. The evidence indicates, however, that, when Mr. M. came to the door of the suite to ask that the occupants keep down the noise and stop letting people in through the side door, the majority of the party attendees went into the adjoining room to avoid detection. There is no evidence that indicates the agents of the hotel knew that any of the attendees of the party were under the age of eighteen, or that they observed any party attendee consuming, or under the influence of, alcohol. The congregation of a group of young people alone is insufficient to put appellees on notice that physical violence was imminent.

As previously stated, there was evidence that the hotel had a policy of discouraging parties, but the evidence is that this policy was for the convenience and security of other guests, and to minimize the potential for damage to hotel property. It was not related to possible violent assaults by a party guest against another party guest.

■ The party included music and a large number of people talking, which produced noise. There was some arguing among attendees, which began around 10:30 p.m., but assuming appellees' agents should have known about the argument, there is nothing to indicate that appellees' agents had any information that violence might be imminent. A verbal altercation alone is insufficient to presage physical violence. *See Tall,* 90 Md. at 256, 44 A. 1007.

■ If the above constituted all the evidence, we would affirm the circuit court's judgment because the evidence would be insufficient to permit a jury to find that the infliction of

harm was foreseeable. The record permits a finding, however, that Ms. Brown was advised that someone had a gun at 10:45 p.m., but that the police were not called until 10:55 p.m.[7] Certainly, a reasonable jury could find that imminent harm was foreseeable when appellees were advised that an attendee of the party had a gun. In light of the fact that an officer responded within three minutes of the 911 call, a reasonable jury could also find that the harm was preventable if appellees' agents had made the call to police immediately upon discovering that someone had a gun. If a jury found facts, such as those just related, that supported the imposition of a duty, it could also find that this duty was breached, proximately causing decedent's death.[8] For these reasons, we reverse the entry of summary judgment and remand this case for further proceedings.

## III. *Bifurcation*

Appellants' primary contention in opposition to the court's orders relating to bifurcation of the liability and penalty phases of the trial is that a second jury will not have sufficient context in which to assess damages.

Maryland Rule 2–503(b) grants a trial court broad discretion to order the bifurcation of a trial for the convenience of the parties or to avoid prejudice. Md. Rule 2–503; *McGarr v. Baltimore Area Council, Boy Scouts of America, Inc.*, 74

---

**7.** We note that the exact times that important events in this case occurred are impossible to discern from the record. Witnesses' testimony conflicts as to times, and testimony conflicts with exhibits. Given our duty to construe the facts in the light most favorable to appellants, we utilized those times which create the largest gap between the time when the duty to take affirmative action arose, and when the police were summoned. On remand, the jury may reasonably conclude that certain events occurred at times different from those we have utilized.

**8.** We are ruling on whether the evidence is legally sufficient to create a jury question. We conclude that it is for the reasons stated herein. The admission of evidence relating to events that occurred prior to appellees' knowledge of a gun on the premises, to provide an appropriate context for the jury, will rest in the sound discretion of the trial court.

Md.App. 127, 142, 536 A.2d 728 (1988), *cert. denied,* 313 Md. 7, 542 A.2d 844 (1988). If a trial results in liability, the trial court, during the damages trial, should exercise its discretion in determining what evidence is relevant and admissible. This will include an appropriate context in which to assess damages. Appellants' argument assumes that the trial court will erroneously rule and unduly prejudice appellants. We are unwilling to make that assumption.

Therefore, we decline to reverse the circuit court's orders relating to bifurcation.

### IV. *Motion to Quash*

■■■ Maryland cases consistently hold that only prior similar incidents that occurred on the premises or very close thereto are relevant and admissible in cases in which a victim is assaulted by a third party on premises controlled by the defendant. *See Scott,* 278 Md. at 160–70, 359 A.2d 548; *Moore,* 147 Md.App. at 347, 809 A.2d 10; *Schear v. Motel Mgmt. Corp. of America,* 61 Md.App. 670, 681–82, 487 A.2d 1240 (1985). The reasoning behind these decisions is that a property owner can only affect those risks that occur on or around its own premises. *Moore,* 147 Md.App. at 348, 809 A.2d 10; *Schear,* 61 Md.App. at 681–82, 487 A.2d 1240.

■■■ Discoverability and admissibility are different questions. We do not hold that prior incidents that did not occur on the premises are never admissible or discoverable, nor do we address the requirement of similarity or timing. Admissibility and discoverability turn on the facts of a particular case. In this case, we hold that it was within the discretion of the circuit court to conclude that discovery of crimes that occurred off premises and within 3 or 5 miles around the hotel was not reasonably calculated to lead to admissible evidence.

Appellants do not contend that appellees' duty to protect decedent arose based on appellees' knowledge of general criminal activity in the area surrounding the hotel prior to the night in question. Nor do appellants contend that appellees negligently failed to take precautions to guard against future

criminal activity on their premises in response to other crimes in the area. Instead, appellants base their argument of liability on appellees' knowledge of events that occurred on the night of the incident in the hotel, leading up to the incident. It is this knowledge, appellants contend, which gives rise to appellees' duty to protect decedent from the criminal actions of the unknown third person.

Therefore, we decline to reverse the circuit court's order granting appellants' motion to quash.

**JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR HOWARD COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID ONE–HALF BY AP-PELLANTS AND ONE–HALF BY APPELLEES.**