**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-1674

NORMA I. WINFFEL, Individually and as Personal Representative of the Estate of Malcolm Winffel; BRANDON WINFFEL; KAYLA WINFFEL; JULIA RODRIGUEZ; ALEJANDRO WINFFEL; CARL UNGER; VIRGINIA HENDERSON,

Plaintiffs - Appellants,

v.

MONTGOMERY MALL OWNER, LLC; PROFESSIONAL SECURITY CONSULTANTS; PROFESSIONAL SECURITY CONCEPTS, INC.; WESTFIELD PROPERTY MANAGEMENT, LLC;

Defendants - Appellees,

and

WESTFIELD, LLC,

Defendant.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Lydia Kay Griggsby, District Judge. (8:19-cv-00838-LKG)

Argued:  January 26, 2023                          Decided:  April 4, 2023

Before NIEMEYER, RUSHING, and HEYTENS, Circuit Judges.

Affirmed by unpublished opinion. Judge Heytens wrote the opinion, in which Judge Niemeyer and Judge Rushing joined.

––––––––––––––––––

**ARGUED:** Jack A. Gold, KARP, WIGODSKY, NORWIND, KUDEL & GOLD, P.A., Rockville, Maryland, for Appellants. Brian Thomas Gallagher, COUNCIL, BARADEL, KOSMERL & NOLAN, P.A., Annapolis, Maryland; Heather Kathleen Bardot, MCGAVIN, BOYCE, BARDOT, THORSEN & KATZ, P.C., Fairfax, Virginia, for Appellees. **ON BRIEF:** Zachary William James King, Demosthenes Komis, KARP, WIGODSKY, NORWIND, KUDEL & GOLD, P.A., Rockville, Maryland, for Appellants. N. Tucker Meneely, COUNCIL, BARADEL, KOSMERL & NOLAN, P.A., Annapolis, Maryland, for Appellees Montgomery Mall Owner, LLC, and Westfield, LLC.

––––––––––––––––––

Unpublished opinions are not binding precedent in this circuit.

2

TOBY HEYTENS, Circuit Judge:

A man shot and killed his wife while she was picking up their children at a high school. The next day, he shot two strangers—Malcolm Winffel and Carl Unger—while attempting a carjacking in a mall parking lot about 14 miles away. Winffel died; Unger was seriously injured. The shooter fled the scene and killed another person before being apprehended. He is now serving a life sentence.

Seeking compensation for their losses, Winffel's estate, Winffel's spouse, Unger, and Unger's spouse sued the mall's owners and a company that provided security services for the mall in federal district court.[1] The only basis for federal jurisdiction is diversity of citizenship, and all agree the case is governed by Maryland law. The complaint's unifying allegation is that the mall's owners and the security company failed to provide adequate security to keep patrons safe.

Defendants moved for summary judgment on five grounds, including that they owed no legal duty to plaintiffs, they did not breach any duty they had, and any breach was not the proximate cause of the alleged injuries.

The district court granted summary judgment for defendants. The court questioned plaintiffs' assertion "that the defendants breached a duty of care by failing to identify [the

---

[1] Plaintiffs also sued a company called Professional Security Concepts, Inc. But the only contract in the record is between one of the mall's owners and defendant Professional Security *Consultants*, and plaintiffs have not challenged defendants' assertion that Professional Security Concepts "had no contract with or connection to the mall at issue." Mall Br. 3 n.2; see Oral Arg. 27:42–28:08. We thus affirm the district court's grant of summary judgment for Professional Security Concepts on that basis.

3

shooter] as a threat to Mall patrons and by failing to deter [him] from entering the Mall on May 6, 2016." JA 416. It also faulted plaintiffs for failing to provide any "indication of what th[e] standard of care would be" even "at this mature stage in this litigation." JA 415. In the end, however, the district court rested its decision on the ground that "defendants did not owe a duty of care to" plaintiffs. JA 416. We review both the district court's grant of summary judgment and its interpretation of state law de novo. See *Colorado Bankers Life Ins. Co. v. Academy Fin. Assets, LLC*, 60 F.4th 148, 151, 153 (4th Cir. 2023).

We agree with the district court that plaintiffs failed to create a genuine dispute of material fact about whether the mall's owners had a legal duty to protect them. As plaintiffs admit, the general rule in Maryland is that "there is no duty to protect a victim from the criminal acts of a third person." Pls.' Br. 26 (quoting *Corinaldi v. Columbia Courtyard, Inc.*, 873 A.2d 483, 489 (Md. Ct. Spec. App. 2005)). And although Maryland courts have recognized three circumstances when "a landowner may be held liable when someone is injured by third party criminal activities on the premises," *Troxel v. Iguana Cantina, LLC*, 29 A.3d 1038, 1050 (Md. Ct. Spec. App. 2011), this case falls outside them.

*First*, plaintiffs cannot establish a duty based on the mall owners' "prior knowledge of *similar criminal activity*—evidenced by past events—occurring on the premises." *Troxel*, 29 A.3d at 1050. Plaintiffs submitted no evidence of previous shootings or attempted carjackings at the mall. Rather, in opposing defendants' summary judgment motion, plaintiffs presented evidence of—at most—two previous incidents of violence

4

during the three-year period before the shooting that gave rise to this case.[2] That is far fewer than those involved in plaintiffs' self-described best case, which featured at least 12 aggravated assaults, two robberies, a rape, two assaults on police officers, and "up to five fights per night on college nights" during a similar period. *Troxel*, 29 A.3d at 1051; see Oral Arg. 6:44–7:36. If two violent incidents at a large commercial shopping center over three years sufficed to flip the presumption that business owners have no duty to protect patrons against third-party criminal activity, the exception would quickly swallow the rule.

*Second*, this is not a case when the property owner knew of "prior conduct of the *assailant*" that made the harm "foreseeable and preventable." *Corinaldi*, 873 A.2d at 492. Until now, Maryland courts appear to have applied this doctrine only to assailants who had prior run-ins with a particular landowner rather than those—like the shooter here—who committed their previous crimes elsewhere. See *id.* (citing *University of Maryland Eastern Shore v. Rhaney*, 858 A.2d 497 (Md. Ct. Spec. App. 2004), which involved a student who attacked his roommate in a dorm room after committing assaults elsewhere on campus). And even if Maryland courts might extend the doctrine to cover a circumstance where a particular assailant was, for example, repeatedly attacking people in mall parking lots, that

---

[2] Before this Court, plaintiffs also cite an expert's testimony that he had reviewed unspecified "historical data" referencing a rape at some point "over, I think, the last four or five years." JA 351. Even assuming this portion of the expert's testimony would be admissible, plaintiffs do not challenge defendants' assertion that they never relied on it in opposing the defendants' summary judgment motion. We thus decline to consider the testimony in our analysis. See, *e.g.*, *Bell v. Brockett*, 922 F.3d 502, 513 (4th Cir. 2019).

is a far cry from what we have here. Instead, the only prior conduct of the assailant appeared to be a domestic crime 14 miles away from the mall. Any duty imposed under such a theory, therefore, would not be limited to the mall but would seemingly reach every business (and perhaps every landowner) throughout a large and densely populated area. We do not think the Maryland courts would take that step.

*Finally*, this is not a time when a property owner "had knowledge of events *occurring immediately before* the actual criminal activity that made imminent harm foreseeable." *Troxel*, 29 A.3d at 1050. In *Corinaldi v. Columbia Courtyard, Inc.*, 873 A.2d 483 (Md. Ct. Spec. App. 2005), for example, Maryland's intermediate appellate court concluded this standard could be satisfied where a hotel employee learned someone had a gun at a large nighttime party at which people had been heard arguing. *Id.* at 494–95. Here, in contrast, the record reveals no evidence from which a reasonable factfinder could conclude a deadly attack against mall patrons was imminent.

We also hold the district court correctly granted summary judgment to the security company. Plaintiffs insist Maryland's highest court would adopt the doctrine set forth in Section 324A of the Restatement (Second) of Torts and, under that doctrine, the security company owed them a legal duty. For their part, defendants point to the absence of any Maryland statute or case law announcing such a rule and urge this Court not to "expand the law" in such a manner. Mall Br. 16.

Whether (and if so when) to impose a legal duty on those who contract to provide security services is a matter with significant policy implications, and any prediction we offered could be superseded at any time by the Maryland courts. But we need not resolve

6

that duty issue to resolve this case in favor of the security company because "we may affirm on any grounds apparent from the record." *Pitt Cnty. v. Hotels.com, L.P.*, 553 F.3d 308, 311 (4th Cir. 2009) (alterations and quotation marks omitted). We thus hold the district court correctly granted summary judgment to the security company because plaintiffs failed to create a genuine dispute of material fact about whether any breach of duty was the proximate cause of the harms for which they seek relief.

Plaintiffs assert the security company was short-staffed on the morning of the shooting and had not patrolled the relevant parking lot during the two hours before the shooter's attack. Having reviewed the record, however, we see no evidence that extra staff or more frequent patrols would have prevented the shooting. See *Pittway Corp. v. Collins*, 973 A.2d 771, 786 (Md. 2009) ("[N]egligence is not actionable unless it is a proximate cause of the harm alleged."). Nor—even "at this mature stage in this litigation," JA 415—have plaintiffs identified any other concrete, reasonable actions that would have prevented the shooting. Plaintiffs' silence on this point is all the more telling given that there was an armed police officer sitting in a marked patrol car about 50 yards from the scene of the shooting, whose presence neither deterred the shooter nor prevented him from escaping on foot.

\*        \*        \*

What happened at the mall was undeniably tragic. Because we see no reason to believe Maryland's highest court would impose tort liability here, however, the judgment of the district court is

*AFFIRMED.*

7